WILLIAM JEFFRIES, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED JANUARY 9, 1911. No. 16,214.

1. **Appeal:** REVIEW. Legal propositions not germane to the evidence in the case under review will not be considered.

2. **Carriers:** UNNECESSARY DELAY. It is the duty of a railroad company, engaged as a common carrier, receiving freight to be transported, to carry it without unnecessary delay. A delay of 24 hours at a station on the way is an unnecessary delay, unless it is explained and excused by something which the law recognizes as sufficient. Under the evidence in this case, the excuse that the company had annulled a regular freight train scheduled to leave a connecting point an hour after the arrival of a car of horses at such point *held* not a sufficient excuse.

3. ———: LIVE STOCK: DUTIES OF CARETAKER. When a shipper of live stock is provided by the railroad company with free transportation for a caretaker and the caretaker actually accompanies the stock during the entire time of such shipment, the carrier has a right to rely upon the caretaker to notify its agents in charge of its train whenever he thinks the necessities of the case require the unloading or feeding and watering of such live stock.

4. **Appeal:** DUTY TO REQUEST INSTRUCTIONS. "Before error can be predicated upon the failure of the court to present a particular feature of a case to the jury, the party complaining should, by an appropriate instruction, request the court to charge upon that feature." *German Nat. Bank v. Leonard,* 40 Neb. 676.

5. ————: INSTRUCTIONS: REVIEW. A judgment will not be reversed because the trial court refused to give an instruction asked, when the substance of such instruction is included in other instructions given.

6. **Carriers:** CONTRACT OF SHIPMENT: LIABILITY FOR NEGLIGENCE. "A common carrier of live stock cannot, by contract with a shipper, relieve itself, either in whole or in part, from liability for injury or loss resulting from its own negligence." *Chicago, R. I. & P. R. Co. v. Witty,* 32 Neb. 275.

7. **Appeal:** ERRORS NOT AFFECTING SUBSTANTIAL RIGHTS. It is the duty of this court, in reviewing a case on appeal, to disregard any error or defect in the proceedings in the court below, which does not affect the substantial rights of the adverse party; and, in obedience to that duty, no judgment will be reversed by reason alone of such error or defect.

APPEAL from the district court for Red Willow county: ROBERT C. ORR, JUDGE. *Affirmed.*

*J. E. Kelby, A. R. Wells* and *W. S. Morlan,* for appellant.

*P. E. Reeder* and *Perry, Lambe & Butler, contra.*

FAWCETT, J.

The issues are fairly stated in defendant's brief: "The petition in this action stated two causes of action. The first seeks to recover $250 damages to a shipment of horses from Norton, Kansas, to Palisade, Nebraska, March 25, 1906, and the second asks for $1,300 damages to a shipment of six horses and one jack from Orleans, Nebraska, to Palisade, Nebraska, March 23, 1907. In the first cause of action the charges of negligence are (*a*) negligent rough handling; (*b*) failure to unload for the purpose of water and feed; and (*c*) negligent delay. In

the second cause of action the same grounds of negligence are alleged as in the first, and, in addition, it is claimed that there was a verbal agreement that the said shipment should be transported on fast freight train No. 77 from Oxford to McCook. The answer to each cause of action denied the charges of negligence contained in the petition, and by way of further answer pleaded written and printed contracts of shipment under which it was alleged (a) that, in consideration of free transportation furnished by the defendant for a caretaker who accompanied each of said shipments, it was agreed that the said animals should be loaded, unloaded, fed and watered by the owner or his agents, and that said animals were to be in the sole charge of such caretaker for the purpose of attention to and care of said animals, and the defendant should not be responsible for such attention and care, and that the plaintiff should load, unload, water and feed said animals, and that a caretaker did in fact accompany each shipment; (b) that the defendant should not be liable for injury to said animals in loading or unloading or injuries which said animals might cause to themselves or to each other or which resulted from the nature or propensity of such animals; and (c) that defendant did not agree to deliver said animals at destination at any specified time. The plaintiff recovered $150 on the first cause of action and $770 on the second, a total of $920 with interest."

The reply denies every allegation of new matter contained in the answer, and alleges that no notice was ever brought to the attention of plaintiff as to any limitation contained in the purported contracts between plaintiff and defendant; that plaintiff had no knowledge of any such limitations and did not in any manner assent thereto, and that such limitations are not effective as between plaintiff and defendant. There was a trial to the court and jury, which resulted in a verdict and judgment, as above indicated, from which defendant appeals.

Defendant in its brief assigns six grounds for a re-

versal of the judgment, which we will consider in their numerical order.

1. "Damage due to inherent propensities of the animals." It is argued that there is an exception to the rule of the carrier's liability as an insurer which exempts it from responsibility for injuries so caused. The law unquestionably is as contended for by defendant, but the trouble is the facts in this case do not fit the law. There is an entire absence of evidence even tending to show that the injuries complained of were caused by the animals themselves or were the result of the nature or propensities of the animals. This point need not therefore be further considered.

2. "Delays." Under this assignment defendant insists that the court erred in stating the issues to the jury, in that it stated plaintiff's cause of action in substantially the terms of the petition, and objects to instructions 4 and 4 "continued," for the reason that negligent delay was given as one of the grounds upon which the jury might find against the defendant. The evidence shows that the horses included in the first cause of action were loaded at Norton, Kansas, March 25, 1906, at 2 o'clock A. M.; that they were shipped as a car-load lot; that an employee of plaintiff, called a "caretaker," accompanied the shipment. The car left Norton one hour later and arrived at Republican City at 8 o'clock the same morning. A regular freight train was scheduled to leave Republican City for McCook on defendant's road at 9 A. M., but on this particular morning, upon arrival at Republican City, the caretaker was advised that the regular freight train for that morning had been annulled and an extra "run out at an earlier hour." The result was that the shipment was delayed at Republican City for 12 hours and did not leave there until 8 o'clock of that evening, which was 11 hours later than it would have left if the regular morning freight train had not been annulled and the extra run out ahead of schedule time. The car reached McCook, a connecting point, at 8 A. M. the next

morning, March 26, about 15 minutes after the freight train had left McCook for Palisade. The result was that the car was delayed at McCook until 10 o'clock the next morning—a delay of 26 hours. From McCook to Palisade, the point of destination, there was no further delay. It will be seen that if the regular freight train out of Republican City on the morning of the 25th had not been annulled, or when it was annulled if the extra had been held until its schedule time, there would have been a delay of only one hour at that point, and the car would have reached McCook in ample time to have connected with the train for Palisade on the morning of March 26. The evidence shows that when the horses arrived at Palisade they were in bad condition, a part of that bad condition being stiffness and swollen joints. In the light of this record, we cannot say the court erred in submitting that question to the jury. The shipment covered by the second cause of action was a shipment of six horses and a jack. This also was shipped as a car-load lot. The car left Orleans at 1 o'clock P. M., March 23, 1907. The petition alleges that defendant agreed to attach the car, when it reached Oxford, the point connecting with its main line, to train No. 77, which was due to leave Oxford that evening. When interrogated as to that, plaintiff testified: "Q. You may state what train, if any, the agent at Orleans told you, when he accepted this car-load of horses and jack for shipment, that the horses would be shipped on from Oxford to McCook. A. I don't remember that he told me the train, but I remember that he told me that I would get out of there in the evening." It is contended by defendant that the contract of shipment was in writing; that the defendant did not agree to transport the shipment in any particular time, and that verbal evidence to vary the terms of the written contract was inadmissible; that the written contract is conclusively deemed to contain the contract of shipment. As a proposition of law, this contention is sound, but we do not think the testimony above quoted should be held to

vary the terms of the written contract.  It stated the information that was imparted to plaintiff by defendant's agent at the time he accepted the shipment, as to what progress would be made in transporting plaintiff's stock under the written contract.  The car reached Oxford at 4 o'clock in the afternoon of March 23.  No. 77 was a fast through freight and passed through Oxford that evening.  The agent at Oxford took the matter up with the chief dispatcher at division headquarters, and asked him if the car could be attached to No. 77.  The dispatcher answered that 77 had its full tonnage and could not take any more cars.  Defendant offered no evidence to show what constituted the full tonnage of No. 77, or to in any manner substantiate the statement made by the chief dispatcher, but assumes that his statement was true, and argues that the car "was then put upon the first available west-bound train."  This train did not leave Oxford until 7:15 P. M., March 24, causing a delay of 27 hours at that point.  It arrived at McCook at 1:05 on the morning of the 25th, and left there some five or six hours later, arriving at Palisade without further delay.  March 23 was Saturday.  There was no train between McCook and Palisade on Sunday, so that the car was transported from McCook to Palisade upon the same train Monday morning upon which it would have been taken had defendant conveyed it from Oxford to McCook on No. 77 Saturday evening.  Hence, defendant argues that plaintiff suffered no injury by reason of the delay occurring at Oxford, instead of at McCook, which would necessarily have occurred had the car gone on No. 77.  Counsel for plaintiff argues that plaintiff resided at McCook, and had private and suitable accommodations for caring for the horses and jack and permitting them to rest over Sunday, if they had been delivered there Saturday night in accordance with the assurance given him by the agent of the company at the point of shipment; but this contention we think fails to find support in the evidence.  It is also contended by plaintiff that McCook was the regular and

21

ordinary feeding place. This fact is supported by the evidence, but there is no evidence to show that the yards at Oxford, in which the stock was kept by defendant during the 27 hours delay at that point, were not just as good in every way as any yards that might have been used at McCook. When plaintiff shipped this stock from Orleans Saturday noon, he knew they could not reach Palisade until Monday morning. They did in fact reach there at that time, and we are unable to discover from the evidence any reason for supposing that there was any material difference to plaintiff whether the stock was taken from the car and rested and fed at Oxford or McCook. If, therefore, the submission of the question of delay as to the second cause of action were prejudicial, it would call for a reversal of the judgment upon the second cause of action; but we are unable to say it was prejudicial, for reasons hereinafter given.

3. "Unloading." Defendant urges that the court erred in submitting to the jury the question of negligence on the part of the defendant in failing to unload and properly feed and care for the animals in transit, and that the court submitted this issue to the jury in both causes of action. It is argued that it was the duty of the caretakers, who were furnished transportation and accompanied the shipments for that purpose, to care for the animals in transit and see that they were properly unloaded, fed and watered; that, if they desired to unload at any point, it was their duty to request the carrier to set the car at the stock yards for unloading. The testimony upon this point offered by plaintiff was that, when the car, covered by the first cause of action, reached Republican City, and again when it reached McCook, it was placed upon a side-track at points where the stock could not be unloaded. Witnesses testified that the defendant did not furnish plaintiff facilities for unloading, feeding and watering; but no witness for plaintiff testified that any request was ever made of defendant to change the location of the car, or to run it up to a chute where the

stock could be unloaded. The evidence is substantially the same as to the second cause of action, the only difference being that as to the stock covered by the first shipment defendant did not, upon its own motion, at any time unload the stock and feed and water it, while it did so at Oxford with the second shipment. We think defendant's contention upon this point is sound, that, when a shipper is provided transportation for a caretaker and the caretaker actually accompanies the stock during the entire time of the shipment, it is his duty, if the defendant does not offer to unload and feed and water the stock, to request that facilities for so doing be given. We think the company has a right to rely upon the caretaker to notify its agents in charge of the train whenever he thinks the necessities of the case require the unloading or feeding and watering of the stock. The effect of this will be considered in connection with the next assignment.

4. "Duty of the court to instruct the jury." Under this head defendant's brief states: "As already pointed out, the court submitted to the jury the issues of negligent delay and negligent failure to unload, when the record contains no evidence to sustain the plaintiff's claims. It was prejudicial error on the part of the trial court to thus submit to the jury issues which there was no evidence in the record to sustain. * * *. It was the duty of the court to instruct the jury as to the law without request, announcing the correct legal rules applicable to the facts in issue and setting out the material facts which the plaintiff must prove in order to recover." This raises the question whether or not it was the duty of the defendant to request the court to charge the jury that defendant would not be liable for any failure to furnish facilities for unloading and feeding and watering unless requested so to do by the caretaker, or whether the court was bound to charge upon that point upon its own motion. We are inclined to take the former view and to hold that, by reason of defendant's failure to request instructions upon this point, the error of the court discussed under point 3 was waived.

5. "Negligence of the plaintiff." Under this assignment it is contended that the court erred in refusing to give instructions 7 and 8, requested by defendant. No. 7 reads: "The court instructs the jury, if you find from the evidence the negligence of the plaintiff or of those acting for him contributed to the losses and injuries of which he complains in his first cause of action, then you must find for defendant on the first cause of action." No. 8 reads: "The court instructs the jury, if you find from the evidence plaintiff by his negligence or those acting for him contributed to the losses of which he complains, you cannot allow plaintiff anything for such losses or damages." We think these instructions are clearly too limited in their scope. Under a fair interpretation of them, if the negligence of plaintiff or his caretaker, in not requesting defendant to furnish facilities to unload and feed and water, contributed to the stiffness of the animals, no recovery whatever could be had by plaintiff, notwithstanding the fact that the evidence clearly shows that, by reason of the rough handling of the trains, the horses were cut, bruised and otherwise seriously injured. Furthermore, we think that instruction No. 4, requested by defendant, and given by the court, sufficiently covered this point. It reads as follows: "The court instructs the jury, if you find from the evidence the defendant was not guilty of negligence in handling either or both of the shipments described in plaintiff's petition, then you will go no further, but you must at once render a verdict in favor of the defendant for such shipment or shipments. If you find in favor of the plaintiff upon the above proposition, you must next inquire whether or not plaintiff or those acting for him were exercising due and reasonable care at the time of the alleged injuries, if, by the exercise of reasonable care, the plaintiff or those acting for him could have avoided the losses or damages, then he is not entitled to recover in this action, notwithstanding you may believe from the evidence that the employees of defendant in charge of these shipments were guilty of negligence in handling them."

6. "Released valuation." This assignment relates to the question as to whether or not the company could limit its liability or damage, by reason of its negligence, to any particular sum, in this case not to exceed $100 upon each animal. That precise question was decided adversely to defendant's contention, in *Miller v. Chicago, B. & Q. R. Co.*, 85 Neb. 458. That case being decisive of this point, it will not be considered further.

No complaint is made in defendant's brief that the verdict of the jury is excessive, nor is any attempt made to justify the manner in which these shipments were handled by the agents in charge of defendant's trains. There is ample testimony both by plaintiff and by disinterested witnesses that, in each instance, when the stock was shipped it was in good condition, and when it reached its destination the animals, without exception, were in bad condition. One had a gash four inches long over one eye; some of the others had the skin knocked off in places; the joints were badly swollen upon several; others had lumps upon them; the jack, when it reached its destination and was placed in the barn, was standing upon three legs. Several instances are related by the witnesses showing that, when those in charge of the trains were switching, they struck the cars containing plaintiff's stock so violently as to knock the horses down, in one instance also knocked the caretaker down and put out his lantern; that in the first shipment that occurred twice while the car stood at Republican City; that in the second shipment, after one of these bumps, the caretaker went to the man in charge of another car in the train, and asked for assistance. The party appealed to accompanied him to his car, and testified that the 2 by 12 timber, which had been spiked to the car as a partition between the jack and one of the stallions, had been broken; that the rope around the jack's neck, by which he had been tied, was also broken; that the jack was lying upon his side under the stallion; that they got him out and got him up. The evidence as to the rough handling is very strong indeed, and the tes-

timony as to the condition the animals were in when they reached their destination we think was sufficient to have supported a larger verdict than was returned by the jury. We also think that the evidence as to the condition the horses were in when they reached their destination shows that those injuries were chiefly the result of the rough handling of the stock by defendant's agents. The evidence upon this point is, so convincing that we think this judgment would have to be affirmed upon the ground that no other verdict would have been justified under the evidence; so that, even if the court may have given instructions upon other branches of the case, which would have been better not given, we cannot say that the giving of them was prejudical error. This appears to be a proper case for the application of section 145 of the code.

Upon the whole record, we are all of the opinion that the judgment of the district court is right, and it is

AFFIRMED.