JOHN THOMPSON v. CHICAGO & NORTHWESTERN RAILWAY.
COMPANY, Appellant.

**Railways:** TRANSPORTATION OF LIVE STOCK:  NEGLIGENCE:  PLEADINGS:
1  EVIDENCE.  Where the plaintiff in an action for negligence in the transportation of live stock made no general allegations concerning the condition of the stock when delivered to the defendant, and when received at its destination, but specifically alleged particular acts of negligence, his recovery is dependent upon proof of the particular acts.  In this action it was alleged that by switching the car in a negligent manner the horses were thrown down and one was so injured as to cause its death.  *Held,* that the evidence of the negligence charged was sufficient to take the issue to the jury.

**Same:** NEGLIGENCE:  EVIDENCE.  The fact that a shipper of stock
2  accompanies the same and undertakes to look after it in a limited way does not relieve the carrier of the duty to use due care in handling the car.  In this action the question of defendant's negligence in handling the car was for the jury.

**Same:**  Evidence of experts that one of the horses was incurably sick
3  at the time of the injury was not conclusive that its death was not caused by the negligent handling of the car, where there was also evidence that the animal was well before the accident, and that after being thrown down and trampled upon by other horses it was thereafter sick until it died; but the question of the cause of its death was for the jury.

Same: INSTRUCTIONS. The mere fact that a veterinary surgeon might have had another and better chance of saving an animal injured while en route would not of itself render the carrier liable for its death; and refusal of an instruction to that effect, of which there was no evidence, was proper, even though correct in the abstract.

New trial: MISCONDUCT IN ARGUMENT. The improper remark of plaintiff's counsel in his closing argument, that defendant had brought a large number of unnecessary witnesses and that the costs would amount to several hundred dollars, and for that reason a verdict should be returned for plaintiff, did not require a reversal, where, upon objection counsel withdrew the remark, though still insisting that large costs had been needlessly incurred, and the court immediately directed the jury not to consider anything that had been said about costs.

*Appeal from Jones District Court.*—HON. W. M. TRIECHLER, Judge.

TUESDAY, JANUARY 21, 1913.

ACTION for damages resulting in judgment against defendant, from which it appeals.—*Affirmed.*

*Clifford B. Paul* and *James C. Davis, George E. Hise* and *A. A. McLaughlin,* for appellant.

*Herrick, Cash & Rhinehart,* for appellee.

LADD, J.—On March 16, 1910, plaintiff loaded a box car with farm implements, household goods, and other articles in one end and four horses in the other. The horses were tied to a scantling spiked to the side of the car, and a plank, two by eight inches, was fastened across to cleats on either side next to the one toward the center of the car. Also boards were nailed across to hold the property at the other end, and in the center there was a sanitary cot. This car was furnished by defendant, and by it transported from Chicago, Ill., to Onslow, Iowa. The petition alleged that by switch-

ing the car in a negligent manner the horses were thrown down, and the mare on the inside so injured as to cause her death.   Appellant contends that the evidence was not such as to warrant a finding that the cars were roughly handled, or that the mare was injured thereby, or that, if injured, this was the cause of her death.   The plaintiff testified that some time after the train started he went to sleep on the cot, and later in the night the car was side-tracked, and "was switched or thrown against something.   It came in with a sudden crash that knocked me off the cot I was lying on.   The horses were bursted down from the plank I had against the horses that was knocked down, and fell against the furniture.   .   .   . The horses were all down, and the first one next to the doorway lying on the floor and the biggest horse on top of her. .   .   .   I ventured to go to the other end.   .   .   .   Managed to get the first horse up, and then managed to get the other horses up until I got to the mare.   She was shoved in with her shoulders against the car, and I could not get her up for a while, but finally I got her up on her feet, and she moaned and groaned; but I thought she would be all right."   He testified further that after starting again the mare "dropped her head and commenced to vomit, and kept vomiting from that place on until we got to Clinton."   On reaching that place the horses were unloaded, and the mare treated by a veterinary surgeon.   The following day she reached Onslow, where she died three days later.   He testified that the mare was "in perfect health and feeling well and was playful when loaded, and was not injured at that time."   The evidence on the part of defendant tended to show that the car was not roughly handled.   The proprietor of the boarding stable at which plaintiff had kept the mare a few days before shipping testified that when taken away she was running at the nose a little and did not eat very well; "acted kind of dull."   The veterinary who treated the mare at Clinton was of opinion that she was afflicted with lung fever, which she had had for three or four days; that she died in consequence

thereof and not because of any injury described by plaintiff; and that a horse never vomits, except when the stomach is punctured, in which event death results within a half day; and this testimony was somewhat corroborated by another veterinary in response to hypothetical questions.

It will be observed that the petition contains no general allegation concerning the condition of the animal when delivered to the carrier at the initial point of shipment, and when received from it at the destination, as did that considered in *Swiney v. Express Co.*, 144 Iowa, 342, and *Gilbert Bros. v. Railway*, 156 Iowa, 440, but specifically alleged the particular negligence of which complaint was made, and no more. This, then, must have been established in order to maintain the action. *Stone v. Railway*, 149 Iowa, 240.

1. RAILWAYS: transportation of live stock: negligence: pleadings: evidence.

The evidence was sufficient to carry this issue to the jury. The horses were standing and apparently well when plaintiff went to sleep, and the household goods were as placed. He was awakened by a bump or sudden crash of the car, which threw him to the floor, his lantern from the nail keg, and upon arising he discovered the horses down, the scantling torn loose at one end, and the boards, holding the goods up, loose. Of course, all this might have resulted from other causes of which there was no evidence, and counsel have supposed some; but the natural inference is that it was the result of the bump or crash described by the witness, which would not ordinarily have occurred in the careful handling of the car. Having traced the injury as a sequence to the rough handling of the car, it is to be inferred that this was due to some neglect on the part of the defendant. The jury might have found that the horses were in good condition when loaded, that the plaintiff had done what he undertook, and that they were not injured in connection with anything he was to do or did, and yet that when he was awakened by the crash, and being thrown from the cot, one of them was so injured that she subsequently died; and if they did so find the deduction naturally to be

drawn therefrom was the loss of the mare as the result of negligence on the part of the defendant in handling the cars.

The defendant was not relieved from meeting the inference that the injury was the result of some neglect on its part precisely as though the shipper had not accompanied the stock. The shipper undertook to see to his stock only in a limited way. The defendant continued in control of all the instrumentalities of transportation. With these it was familiar, and there was precisely the same reason for inferring its negligence, as alleged, from the circumstances disclosed, upon a showing that the mare, though injured in transit, was not injured in connection with what the shipper undertook to do or did, as though he had not accompanied the stock at all. See *Mosteller v. Railway*, 153 Iowa, 390. Whether defendant was negligent in the rough handling of the cars was for the jury to determine.

2. SAME: negligence: evidence.

II. The veterinary who examined the mare at Clinton testified that she had pneumonia and could not recover, and that she had been afflicted therewith three or four days previous, and that this was not caused by the fall of the large horse lying on her. The opinion of another veterinary, in response to a hypthetical question, tended to sustain this view, as did the testimony of the keeper of the boarding stable in Chicago. But the jury was not bound to accept these opinions. Experience has demonstrated that the conclusions of experts are not infallible. Their evidence is subject to infirmities peculiar to that given by other witnesses.

3. SAME.

The mere fact of the animal being sick raised no inference that this was in consequence of any negligence on the part of defendant (*Colsch v. Railway*, 149 Iowa, 176;) but the facts, if found, that she was well immediately before the so-called crash and the precipitation of the large horse, weighing 1,700 or 1,800 pounds, on her, and that upon being helped up she groaned and was sick thereafter until

she died, did warrant the inference that she then received injuries which caused her death. Such, is the natural conclusion to be drawn from the state of facts testified to by plaintiff. It is said that, as the veterinaries declared a horse could vomit only when the stomach is punctured, and in that event could not survive more than ten or twelve hours, it must have been found the mare was not sick. But this merely put in issue the testimony of plaintiff that she actually did vomit. Moreover, plaintiff may have been mistaken in thinking that the emission was from the mouth instead of the nostrils, or the jury might have concluded that she was sick, and yet have rejected plaintiff's testimony concerning this matter. But the veterinary was of opinion that she had pneumonia, and was afflicted with that disease before loaded in the car, and that her death was due to this cause and not to injuries she might have received in the car; and appellant's counsel seem to regard this evidence as conclusive. Enough has been said to indicate that this is not so, but that it was for the jury to say whether the death of the mare was in consequence of injury suffered in the car, or pneumonia, independent of such injury.

III. Instructions 2 and 3, requested, were included in those given. There was no error in refusing the ninth instruction, because issue as to negligent delay was not submitted to the jury. The fifteenth instruction advising the jury of the duty of plaintiff to notify defendant's employees if assistance in the way of a veterinary were needed on the way to Clinton, and of the employees to set the car out to enable him to avail himself of such services, if required, and "that the mere fact that a veterinarian might have had a better opportunity of saving said mare if he had been called sooner will not make the defendant liable." The instruction was correct enough in the abstract (*Peck v. Railway*, 138 Iowa, 187; *Jeffries v. Railway*, 88 Neb. 268, [129 N. W. 273];) but there was no evidence tending to show that the result might have been different had a veterinary been called sooner, nor that plaintiff was aware of

4. SAME: instructions.

the serious condition of the mare (he having testified that he thought she would be all right), nor that, had the car been set out, the services of a veterinary could reasonably have been obtained. The matter was not touched in the evidence, and we are of opinion that in submitting the issue as to whether plaintiff was guilty of contributory negligence in what he should have done in the emergency occurring in the night was sufficiently brought to the attention of the jury. That issue was for the jury, as were the others discussed; and the instructions were accurate, clear, and definitely limited consideration to the issues involved.

IV.  In the course of the closing argument counsel for plaintiff criticised defendant for bringing a large number of witnesses from Chicago and elsewhere to testify in the case, and argued that the costs would amount to $600 or $700, largely for unnecessary witnesses, and that jury should return a verdict against defendant on this account. On objection, counsel withdrew what was said, but insisted that several hundred dollars of useless costs had been incurred, and the court immediately instructed the jury ''not to consider at all anything said about the matter of costs. You are to ignore it and pay no attention to it. You have nothing to do with it, but are to determine the case solely on the evidence and instructions that will be given you on the law.'' In view of this record, it cannot well be said that the antidote was not effectual in removing the poison injected by the improper remarks. *Bettis v. Railway,* 131 Iowa, 46; *Mackerall v. Railway,* 111 Iowa, 547; *Lindsay v. Des Moines,* 74 Iowa, 111.

5. NEW TRIAL: misconduct in argument.

The evidence was such as fairly to carry the case to the jury; and, though we might not have reached the conclusion the jury did, no ground for disturbing the verdict appears in the record.—*Affirmed.*