**DOUGLAS RESEARCH AND CHEMICAL, INC., a Michigan Corporation,
Plaintiff,**

v.

**Philip M. SOLOMON et al.,
Defendants.**

**Civ. A. No. 4–72695.**

United States District Court,
E. D. Michigan, S. D.

Jan. 21, 1975.

Charles W. Chandler, Livonia, Mich., for plaintiff.

Lee D. Tout, East Detroit, Mich., Philip J. Anderson, Mt. Clemens, Mich., for defendants.

Before EDWARDS, Circuit Judge, and FEIKENS and JOINER, District Judges.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Plaintiff Douglas Research and Chemical, Inc., (Douglas), initiated this civil rights action under 42 U.S.C. § 1983 for injunctive and declaratory relief to restrain defendant state officers, Hon. Hunter D. Stair and Edna Miller, Clerk of the Macomb County Circuit Court, in their execution and enforcement of the Michigan Garnishment Statute, M.C.L.A. § 600.4011, and the court rule from which it derives its operative effect, G. C.R. 738. Plaintiff sought relief on the grounds that the Michigan garnishment procedure violates the Due Process Clause of the Fourteenth Amendment. Since plaintiff met the requirements of 28 U.S.C. §§ 2281, 2284, a three-judge court was convened to hear and determine the merits of this case. The parties stipulated to the following facts.

On November 19, 1973, defendant Solomon filed suit in Macomb County Circuit Court against Douglas, Solomon's former employer, alleging breach of oral contracts for employment and for payment of commissions on the sale of Douglas stock for which Solomon sought some $14,000 in unpaid salary, expenses, and commissions. Contemporaneous with the filing of this suit, assigned to defendant Stair, Solomon's attorney executed two affidavits in support of prejudgment writs of garnishment. De-

fendant Miller, Clerk of the Macomb County Circuit Court, through her agent issued the writs of garnishment, one of which was served upon the Bank of the Commonwealth where Douglas had on deposit sums in excess of $10,000. This account was exclusively the property of Douglas, and Solomon had no prior legal interest in the funds. No judicial officer reviewed the affidavits or writs prior to issuance.

Service of the writ upon the bank effectively froze Douglas' corporate account without prior notice or pre-garnishment opportunity for a hearing to contest either the garnishment or the merits of Solomon's claims.[1] Douglas answered Solomon's complaint in Circuit Court, denying any agreement with Solomon, and twice moved unsuccessfully for dissolution of the writ alleging the unconstitutionality of the garnishment procedure and declaring its inability to post a bond which would have terminated garnishment proceedings. The present suit followed.

■ Defendant Stair has moved for summary judgment asserting judicial immunity. Other than having been assigned to Solomon's suit against Douglas, Judge Stair played no meaningful role in the initiation or the execution of the garnishment procedure now under attack until Douglas sought dissolution of the writ in Circuit Court. Since the presence of Judge Stair can neither add nor detract from the relief which plaintiff now seeks, his motion for summary judgment is granted.

■■ Defendants urged the court to abstain from rendering a decision in this case. The Michigan Supreme Court has before it a case raising the same issues, but there is no indication that a decision there is imminent.[2] The ab-

1. The writ of garnishment directs the garnishee to deliver no tangible or intangible property to the principal defendant, unless allowed by statute or court rule. G.C.R. 738.3(4)(b). Service of the writ upon the principal defendant occurs simultaneously with service of the writ upon the garnishee defendant. See G.C.R. 738.4.

2. The constitutionality of the Michigan garnishment statute and court rule are currently before the Michigan Supreme Court in Cochrane v. Westwood Wholesale Grocery Co., Sup.Ct. No. 55572.

stention doctrine is properly invoked only in those cases where resolution of the federal constitutional question is dependent upon or may be materially altered by the determination of an uncertain issue of state law. Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). The procedure provided by the Michigan statute and court rule here challenged is clear and unambiguous on its face and as applied to plaintiff. Because the court is unable to conclude that the Michigan statute and court rule are susceptible of an interpretation that might obviate the need for constitutional adjudication, abstention in this case would "amount to shirking the solemn responsibility of the federal courts to 'guard, enforce, and protect every right granted or secured by the Constitution of the United States.'" Kusper v. Pontikes, 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973), *quoting* Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542 (1884).

Michigan gives its circuit courts power, by garnishment, to apply to the satisfaction of a claim evidenced by contract personal property belonging to or debts owing the person against whom the claim is asserted but which is in the hands of a third party. M.C.L.A. § 600.4011. After commencement of an action, the clerk of the court is empowered to issue a writ of garnishment if the plaintiff makes and files an affidavit indicating that the principal defendant is indebted to him in a stated amount upon a contract, declaring that he believes a named person to have control of defendant's property, stating that he is justly apprehensive of the loss of his claim unless a writ issues, and setting forth the facts in support of the claim. G.C.R. 738.2.

After service of the writ upon him and prior to judgment, the principal defendant may terminate the garnishment proceedings by posting a bond in the amount of 1¼ times the amount of plaintiff's claim, conditioned to pay any judgment obtained by plaintiff. G.C.R. 738.14. Otherwise, a principal defendant must seek reduction of the bond or dissolution of the writ without bond at a special hearing:

"(1) In exceptional circumstances, on notice and hearing, the court may, in the interests of justice, set aside a garnishment in whole or in part upon the furnishing of a bond in an amount less than prescribed . . . . The court should give full consideration to the following factors:

(a) The nature of the plaintiff's claim, whether it is liquidated or unliquidated;

(b) The solvency of the principal defendant;

(c) The likelihood of loss to the plaintiff if garnishment is terminated;

(d) The relative priorities of the claims of employees and other persons;

(e) The likelihood of irreparable harm to the garnishee defendant if garnishment is not terminated." G.C.R. 738.16.

Relying upon Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), plaintiff challenges the constitutionality of the Michigan garnishment procedure for its failure to provide notice and hearing prior to issuance of the writ. Defendants, on the other hand, assert that, under Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), notice and hearing are not inflexible concepts but must be examined in the context of a particular statutory scheme.

The constitutionality of the Georgia garnishment statute was recently argued before the United States Supreme Court. North Georgia Finishing Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1974).

*Fuentes* involved the constitutionality of the Florida and Pennsylvania replevin statutes which permitted a secured installment seller to repossess goods without notice, hearing, or judicial participation simply with the aid of a sheriff utilizing a writ issued by the court clerk at the seller's request. Declaring that a temporary, non-final deprivation of property which was not essential to life nevertheless qualified as a deprivation of property under the Fourteenth Amendment, *Fuentes* held that, with limited exceptions, a prior hearing was mandated by the Due Process Clause.[3]

The Supreme Court retreated from the views expressed in *Fuentes* when, in *Mitchell,* it upheld a Louisiana pre-judgment sequestration procedure which authorized *ex parte* seizure of property subject to a vendor's lien without prior notice or hearing. In finding the Louisiana procedure constitutional, the Court took a more flexible view of due process:

"[Prior cases] merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pre-termination hearing where a full and immediate post-termination hearing is provided. The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'" 416 U.S. at 611, 94 S.Ct. at 1902, *quoting* Phillips v. Commissioner, 283 U.S. 589, 596–597, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).

To be sure, *Mitchell* found several distinctions between the Louisiana procedure and the statutes reviewed in *Fuentes.* Judicial approval of the sequestration order was required. The grounds for sequestration had to be clearly demonstrated in the affidavit supporting the writ. The attaching creditor was obliged to post a bond, and the debtor could regain possession of the property by posting his own bond. Most important, the Louisiana statute "entitles the debtor immediately to seek dissolution of the writ, which must be ordered unless the creditor 'proves the grounds upon which the writ was issued' . . . the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages in favor of the debtor, including attorney's fees." *Id.* at 606, 94 S.Ct. at 1899.

When the Michigan garnishment procedure is examined in the light of both *Fuentes* and *Mitchell,* several constitutional defects become apparent. First, the procedure in this case sanctioned the effective seizure of funds which were exclusively the property of Douglas. Solomon's only interest in these funds arose by way of a desire to preserve Douglas' assets in the event that Solomon's contract claim ripened into judgment. The reality here is most unlike that before the Court in *Mitchell* where both debtor and creditor had current, real interests in the sequestered property.[4]

Second, the dissolution hearing contemplated by G.C.R. 738.16, even if it could be obtained immediately after issuance of the writ, does not provide a meaningful test of the merits of plain-

---

3. 407 U.S. at 96, 92 S.Ct. 1983. The exceptions include cases where attachment might be necessary to acquire jurisdiction of the defendant, to protect the public against some sort of immediate harm, or to guard against the demonstrated possibility that the alleged debtor will destroy or conceal disputed goods. *Id.* at 91, 92 S.Ct. 1983. These considerations have no significance in this case.

4. "Plainly enough, this is not a case where the property sequestered by the court is exclusively the property of the defendant debtor. The question is not whether a debtor's property may be seized by his creditors, *pendente lite*, where they hold no present interest in the property sought to be seized." 416 U.S. at 604, 94 S.Ct. at 1898.

tiff's claim. The enumerated factors which the court is to consider at the dissolution hearing do not reach the underlying merits of the principal suit, and this hearing is not a necessary result of the garnishment but is had, if at all, only on the principal defendant's motion. However, in *Mitchell,* the statute under consideration provided for an immediate hearing at which the creditor must establish the right on which the writ was issued:

> "The issue at this stage of the proceeding concerns possession pending trial and turns on the existence of the debt, the lien, and the delinquency. These are ordinarily uncomplicated matters that lend themselves to documentary proof; and we think it comports with due process to permit the initial seizure on sworn *ex parte* documents, followed by the early opportunity to put the creditor to his proof." *Id.* at 609, 94 S.Ct. at 1901.

Third, under Michigan law, a party seeking a writ of garnishment need post no bond to protect the principal defendant's interest in the garnished funds. In this sense, the Michigan garnishment procedure does not seek to minimize the risk of error by furnishing protection against harm to the principal defendant pending trial on the merits. *See id.* at 618, 94 S.Ct. 1895.

Thus, we hold that, insofar as M.C.L. A. § 600.4011 and G.C.R. 738 permit the pre-judgment garnishment of funds in which the claimant has no interest without a bond requirement to protect the owner of the funds and without an opportunity for a prompt hearing to test the merits of the claim and the validity of the garnishment, the Michigan garnishment procedure violates due process and is therefore unconstitutional under *Fuentes* and *Mitchell.* Accordingly, defendants Solomon and Miller are hereby enjoined from maintaining the writs of garnishment which issued from the Macomb County Circuit Court in this case, and Solomon is directed to release immediately the garnishment of funds held by the Bank of the Commonwealth.

So ordered.