Richard M. LECATES, Individually and on behalf of all others similarly situated, Plaintiff,

v.

JUSTICE OF the PEACE COURT NO. 4 OF the STATE OF DELAWARE et al., Defendants.

Civ. A. No. 76–295.

United States District Court, D. Delaware.

Dec. 23, 1976.

Gary A. Myers, Community Legal Aid Society, Dover, Del., for plaintiff.

Carolyn Berger, Asst. Atty. Gen., Wilmington, Del., for defendants Justice of the Peace Court and Justice of the Peace Short in his official capacity.

John A. Sergovic, Jr., of Tunnell & Raysor, Georgetown, Del., for defendant Sussex Trust Co.

STAPLETON, District Judge:

This is an action brought pursuant to 42 U.S.C. § 1983 which challenges the constitutionality of 10 Del.C. § 9571(b) and § 9572. These provisions of the Delaware Code require a losing defendant in an action brought in a Justice of the Peace Court to post a surety bond within fifteen days of judgment in order to appeal for a trial *de novo* in the Superior Court.

The complaint alleges that, on May 26, 1976, Sussex Trust Company instituted a debt action against Lecates, the plaintiff here, in Justice of the Peace Court No. 4. Sussex sought a $1,500 deficiency judgment after it had repossessed Lecates' automobile. Judgment was entered against Lecates for $1,500 plus costs. He then attempted to obtain the surety bond required by 10 Del.C. § 9572. Because of his indigency he was unable to do so. He requested that Justice of the Peace Short waive the bond. Short refused and set the bond at $1,500 with surety as dictated by the statute.

Plaintiff argues that had Sussex Trust originally brought suit in the Court of Common Pleas or the Superior Court, both of which have concurrent jurisdiction over such an action, plaintiff would have had an opportunity to conduct pre-trial discovery, to have a jury trial and to present his defenses to a judge learned in the law.[1] Because the action was instituted in Justice of the Peace Court, he could obtain these benefits only on appeal in a trial *de novo*. As a result of his indigency and his consequent inability to post the appeal bond, he was precluded from appealing. He con-

1. In Delaware, a justice of the peace need not be a lawyer.

tends that the provisions requiring the bond thus operated to deny him equal protection and due process of law.

Presently before the Court on a motion to dismiss are questions concerning abstention, *res judicata* and exhaustion of state remedies. I have concluded that none of these doctrines is appropriate for application in this case. Accordingly, the motion to dismiss will be denied.

## I. ABSTENTION

Counsel for Judge Short has contended that the Federal Court should abstain from deciding the question this case presents because it involves an important state policy, a matter the state courts should be permitted to decide for themselves. In addressing this argument, I begin by noting that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." [2] Only in three narrow classes of cases have the courts found the kind of "exceptional circumstances" which justify depriving the plaintiff of the federal forum he has selected for the adjudication of his claim.[3] This case does not fall within any of those classes.

A. The Supreme Court has held that it is proper for the federal courts to decline to exercise jurisdiction in cases which pose a federal constitutional issue which a state court decision on a matter of state law might moot or present in a different posture.[4] This is the so-called "Pullman doctrine". Abstention is not proper under the Pullman doctrine, however, if the state courts previously have had the opportunity to construe the challenged statute or if the statute is unambiguous and could not reasonably be interpreted to avoid the constitutional question.[5]

The terms of the provisions the plaintiff is attacking are clear and unequivocal. Moreover, less than six years ago, the Delaware Supreme Court decided a case challenging the very same appeal bond requirement on the very same grounds now raised in this Court.[6] The court held that the appeal bond statutes violated neither the state nor federal constitutions. There is no reason why the plaintiff should be forced to offer the state courts a second opportunity to construe a statute that they have so recently upheld. In addition, there is no reason to think that they would now find some interpretation of this unambiguous provision which would obviate the constitutional question that is before me.

B. The second category of cases in which the federal courts should abstain is that in which federal jurisdiction is invoked to enjoin a pending state proceeding, usually a criminal or quasi-criminal proceeding.[7] This ground is easily disposed of here because the plaintiff does not seek to enjoin any pending action. The state court action which gave rise to this suit ended some months ago when Lecates was unable to post the appeal bond.

C. Finally, abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." [8] This test can be broken

2. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

3. *Id.*

4. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

5. *Reetz v. Bozanich,* 397 U.S. 82, 86, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

6. *State ex rel. Caulk v. Nichols,* 281 A.2d 24 (Del.1971), *appeal dismissed,* 408 U.S. 901, 92 S.Ct. 2501, 33 L.Ed.2d 327 (1972).

7. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

8. *Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 814, 96 S.Ct. at 1244.

down into two parts. A defendant requesting the federal court to stay its hand must show, first, that there is a difficult question of state law. The defendant must also show that the case involves some policy problem of substantial public import. This case satisfies neither prong of the test. Because the statute is unambiguous and because it has been interpreted by the state courts numerous times,[9] no state law issue remains. This Court is being called on to determine solely whether the statute, as it has been interpreted by the state courts, passes federal constitutional muster.

■ The second aspect of the test is somewhat more difficult to apply. A statute does not assume broad public importance because an interested party so characterizes it. If the exception were expansively construed in that fashion, it would envelop more cases than it excludes. It has not been given such a construction and, in fact, it has been limited to a very narrow range of cases, in particular cases which were not only important to the State as a whole but which also turned on the peculiarities of local conditions. In *Louisiana Power and Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), for example, the Court held that abstention was proper because the case called for an interpretation of the vagaries of the local eminent domain statute, an issue of sovereign prerogative best interpreted in the local setting. *See also Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), which involved interpretation of the State's elaborate statutory scheme for the management of the State's oil and gas fields which were central to the economy of the State.

■ There is no similar local concern or paramount state interest in this case.

There is no suggestion in the record that the efficient functioning of the State's entire Justice of the Peace Court system is at stake or that there is any peculiarly local concern with respect to the appeal bond statute. Abstention on this ground would not be justified.

## II.  RES JUDICATA

At oral argument on the motion to dismiss, I raised the question of whether the plaintiff has already obtained a judicial determination with respect to the constitutionality of the appeal bond requirement and, thus, was barred by the doctrine of *res judicata* from relitigating the question in this Court. The parties submitted memoranda on this point and I have determined that there has been no prior judicial decision that would prevent this Court from adjudicating this matter.[10]

Professor Moore, quoting from *Angel v. Bullington,* 330 U.S. 183, 192–93, 67 S.Ct. 657, 91 L.Ed. 832 (1947), has described the purpose and effect of *res judicata:*

> The doctrine of res judicata is not a technical rule, but a rule of fundamental repose for both society and litigants. Its salutary principle is "founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court." The doctrine prevents an encore and "reflects the refusal of law to tolerate needless litigation." And subsequent litigation is needless if, by fair process, a party over whom the court had jurisdiction raised or had an opportunity to raise

---

9.  *See* cases cited in *State ex rel. Caulk v. Nichols, supra.*

10.  Because I have concluded that Judge Short's action with respect to the appeal bond cannot accurately be termed a "judgment" to which *res judicata* would apply, I need not decide the more difficult question whether *res judicata* should be applied to bar a collateral attack on a decision denying the right to appeal the judg-

ment on the merits which decision is itself not subject to review. I found no authorities on this point but *see Tucker v. City of Montgomery Bd. of Comm'rs.,* 410 F.Supp. 494 (M.D.Ala. 1976), in which a three-judge court invalidated a state appeal bond statute applicable in criminal cases without discussing whether the prior proceedings in the state court which had resulted in a conviction constituted *res judicata.*

issues that were a part of the cause of action previously dealt with.[11]

■ Oftentimes a party will attempt to avoid the application of *res judicata* by arguing that the claim he is raising was not raised or decided in the prior litigation. *See, e. g., Mertes v. Mertes,* 350 F.Supp. 472, *aff'd* 411 U.S. 961, 93 S.Ct. 2141, 36 L.Ed.2d 681 (1973). This argument consistently fails because, as Professor Moore explains, the doctrine covers not only issues that were raised but also all issues that could have been raised. But that is not the problem this case presents.

■ The plaintiff readily admits that he raised his constitutional objection to the appeal bond before Judge Short. However, his doing so did not afford Lecates the opportunity to be "fully heard" by a court with jurisdiction. As a matter of Delaware law, the justice of the peace carries out a merely ministerial or administrative duty when he sets an appeal bond. The court in *Legates v. Lingo,* 8 Houst. 154, 32 A. 80 (Del.Super.1888), described the bond setting function of the Justice of the Peace Court as follows:

> . . . [A] justice of the peace, in approving or refusing to approve an appeal bond in a case tried and decided by him, does not act judicially, although he does, indeed, exercise his discretion in performing the act; but it is the same discretion, exercised by every ministerial officer who merely takes bail. The taking of security in such cases by a justice of the peace is rather a ministerial than a judicial act; and, if he has acted corruptly or maliciously in it, an action lies.

When Judge Short set the bond in Lecates' case, he was, in essence, performing a clerical function. He had no authority to waive the bond[12] and, in such a capacity, he could not entertain any constitutional challenge to it. In other words, Short's negative response to the request that he waive the appeal bond because of its allegedly unconstitutional impact on Lecates did not constitute a "judgment", the kind of judicial determination to which *res judicata* attaches.

## III. EXHAUSTION OF STATE REMEDIES

■ Counsel for the justice of the peace argued that Lecates should have brought his case in the State courts first, by way of either a mandamus action or a petition for a writ of certiorari. The simple answer to this is that a plaintiff in a civil rights action has no obligation to exhaust state avenues of relief before coming into federal court. This principle has been affirmed repeatedly by the Supreme Court. *E. g., Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

## IV. SUSSEX MOTION

■ One other matter remains for disposition. Plaintiff named as a defendant in this action the Sussex Trust Company, the plaintiff in the original action in Justice of the Peace Court. Although Sussex wishes to protect the judgment it obtained against Lecates should an appeal be permitted, it takes no position with respect to the constitutionality of the appeal bond statute. Accordingly, it wishes to be relieved of any obligation to defend in this action.

While Sussex's desire to be relieved of any obligation to defend this action is understandable, plaintiff has an interest in securing a declaratory judgment which will bind Sussex as well as Magistrate Short. For this reason, Sussex's motion to dismiss as to it will be denied. If it sees fit, however, Sussex need play no active role in the defense of this action.

---

11.  1B *Moore's Federal Practice* ¶ 0.405[1].

12.  *State ex rel. Caulk v. Nichols, supra.*