**Joseph S. GEORGE, Jr. and Ricky D. Jackson, Appellants,**

v.

**Robert PARRATT, Warden, Nebraska Penal Complex, Appellee.**

No. 78–1839.

United States Court of Appeals, Eighth Circuit.

Submitted July 5, 1979.

Decided July 11, 1979.

Joseph S. George, Jr., and Ricky D. Jackson, pro se.

Paul L. Douglas, Atty. Gen., and J. Kirk Brown, Asst. Atty. Gen., Lincoln, Neb., on brief, for appellee.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Plaintiffs, two Nebraska state inmates who were convicted of sexual offenses and sentenced under the Revised Sexual Sociopath Act, Neb.Rev.Stat. § 29–2901 et seq., brought this action under 42 U.S.C. § 1983 seeking money damages for alleged violations of due process and equal protection by the prison warden. Plaintiffs also allege cruel and unusual punishment. The alleged violations of constitutional rights stem from defendant's having denied plaintiffs the benefits of Neb.Rev.Stat. § 83–1,106 et seq., which provides that all prisoners shall by statutory formula be granted good time credit for time served in the state prison complex. Plaintiffs claim they have been deprived of said good time credits because they have been sentenced to an indefinite term under the Sexual Sociopath Act. For this deprivation plaintiffs seek $450,000 for mental duress and anguish, $250,000 for discrimination and $300,000 for violation of their civil rights.

Defendant responds that (1) the good time credit provisions were inapplicable to plaintiffs because plaintiffs had been committed for an indefinite period, (2) such application of the Sexual Sociopath Act denied plaintiffs neither due process nor equal protection, and (3) defendant had proceeded in good faith in exercising the discretion granted him as a prison official and all actions taken regarding plaintiffs were taken in full compliance with state law. Defendant also filed a motion asking the federal district court to abstain from further action on the ground the complaint raises a claim founded solely on state law which is independent from and which may moot any federal constitutional question.

The district court, citing Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941),[1] granted the motion to abstain by an order of October 6, 1978, which concluded that (1) although the constitutionality of the indeterminate sentencing under the Sexual Sociopath Act has been upheld, the interplay of "good time" provisions and the indeterminate sentencing under the Sexual Sociopath Act has not been considered by the state Supreme Court, (2) resolution of the apparent conflict between the good time credit provisions and the indeterminate sentencing under the Sexual Sociopath Act by the state courts may clarify or eliminate any federal constitutional questions, and (3) the conflict between the two provisions is purely a matter of state law. The dismissal was without prejudice to plaintiffs' right, after final determination of the state legal issues by state courts, to refile their claim in federal court.

Plaintiffs appeal claiming that the district court improperly dismissed their claim under the abstention doctrine.

We review the action of the district court to determine if that court's action constituted an abuse of discretion. "The decision to abstain 'involves a discretionary exercise of a court's equity powers.'" Public Citizen, Health Research Group v. Commission on Medical Discipline, 573 F.2d 863, 866 (4th Cir. 1978), citing Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

█ Although federal courts have generally regarded vital questions of civil rights as the least likely candidates for absten-

1. Professor Wright has identified four overlapping abstention doctrines, the first of which was relied upon by the district court below in dismissing plaintiffs' suit: (1) to avoid deciding a federal constitutional issue where the case may be disposed of on questions of state law [hereinafter referred to as Pullman or Pullman-type abstention]; (2) to avoid needless conflict with administration by the state of its own affairs; (3) to leave to the state resolution of unsettled questions of state law; and (4) to ease congestion of federal court dockets. C. WRIGHT, LAW OF FEDERAL COURTS § 52 (3d ed. 1976); see, e.g., Reetz v. Bozanich, 397 U.S. 82, 85, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), citing City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 640–41, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959); Davy v. Sullivan, 354 F.Supp. 1320, 1329 (M.D.Ala.1973), citing Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), and Harrison v. NAACP, 360 U.S. 167, 176, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). See also Bower v. Coder, 345 F.Supp. 78 (M.D.Pa.1972); Reichenberger v. Warren, 319 F.Supp. 1237, 1239 (W.D.Wis.1970).

tion,[2] they have repeatedly held that actions brought under the civil rights statutes are not exempt from the abstention doctrine.[3] Comparing the numerous civil rights cases in which abstention has been held appropriate [4] with those cases in which the federal courts have declined to abstain,[5] suggests several factors which should be considered by a trial court in deciding whether or not it should abstain.

First, what effect will abstention have on the rights to be protected? "Any consideration of abstention, whether under *Pullman* or other doctrines . . . must take into primary account its effects on the rights sought to be protected in the court asked to stay its hand." [6] The two elements in this consideration are the nature of the petitioner's right and the nature of the remedy necessary to protect or vindicate the exercise of the right. Federal courts have held abstention is particularly inappropriate with actions brought to protect fundamental rights, i. e., if delay or postponement by the federal courts will have a chilling effect on the exercise of first amendment rights.[7] Similarly, abstention may be warranted in

actions in which extraordinary relief is neither sought nor required and in which any deprivation is completely compensable by an award of money. But federal courts have refused to abstain in suits for injunctive relief against state laws or actions which impinge upon the exercise of established constitutional rights.[8]

In the present case, plaintiffs claim that their right to good time credit has been denied. Thus far, however, such a right has not been recognized as fundamental or guaranteed by the Constitution.[9] Had plaintiffs sued for restitution of good time credits, abstention might delay their being given good time credit which could conceivably prolong their imprisonment. Plaintiffs, however, have requested no extraordinary relief, rather they have sought only monetary damages. Abstention would only postpone the time when such damages might be recovered, and there would be no chilling effect on the exercise of first amendment rights.

Another factor to consider in determining whether abstention is appropriate is wheth-

**2.** *E.g., Canton v. Spokane School Dist. No. 81,* 498 F.2d 840, 846 (9th Cir. 1974); *Devlin v. Sosbe,* 465 F.2d 169, 172 (7th Cir. 1972); *Moreno v. Henckel,* 431 F.2d 1299, 1301 (5th Cir. 1970) (and cases cited therein).

**3.** *E.g., Diaz Gonzalez v. Colon Gonzalez,* 536 F.2d 453, 458 n.16 (1st Cir. 1976); *Lewellyn v. Gerhardt,* 513 F.2d 184, 187 (7th Cir. 1975); *Reid v. Board of Educ.,* 453 F.2d 238, 242 (2d Cir. 1972). *But see Beauregard v. Wingard,* 230 F.Supp. 167, 185 (S.D.Cal.1964).

**4.** *See, e.g., Pugh v. Rainwater,* 572 F.2d 1053 (5th Cir. 1978); *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092 (9th Cir. 1976); *Connecticut State Fed'n of Teachers v. Board of Educ. Members,* 538 F.2d 471 (2d Cir. 1976); *Bonner v. Circuit Court,* 526 F.2d 1331 (8th Cir. 1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 *rehearing denied,* 425 U.S. 926, 96 S.Ct. 1525, 47 L.Ed.2d 773 (1976).

**5.** *E.g., Wright v. McMann,* 387 F.2d 519 (2d Cir. 1967), *on remand,* 321 F.Supp. 127 (N.D.N.Y.1970), *aff'd in part and rev'd in part,* 460 F.2d 126 (2d Cir. 1972); *Lecates v. Justice of the Peace Court No. 4,* 423 F.Supp. 1379 (D.Del. 1976); *Douglas Research & Chemical, Inc. v. Solomon,* 388 F.Supp. 433 (E.D.Mich.1975).

**6.** *Ross v. Houston Independent School Dist.,* 559 F.2d 937, 942 (5th Cir. 1977), *quoted in Gibson v. Jackson,* 578 F.2d 1045, 1051 (5th Cir. 1978).

**7.** *E.g., Inmates of Milwaukee County Jail v. Petersen,* 353 F.Supp. 1157, 1160 (E.D.Wis. 1973). *See generally Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Dombrowski v. Pfister,* 380 U.S. 479, 483–85, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1964).

**8.** *Cf. Douglas Research & Chemical, Inc. v. Solomon,* 388 F.Supp. 433 (E.D.Mich.1975); *Cudnik v. Kreiger,* 392 F.Supp. 305 (N.D.Ohio 1974); *Inmates of Milwaukee County Jail v. Petersen,* 353 F.Supp. 1157 (E.D.Wis.1973).

**9.** *See Dolph v. Crisp,* 446 F.Supp. 1179, 1182 (E.D.Okl.1978); *Craft v. Attorney General,* 379 F.Supp. 538, 539 (M.D.Pa.1974); *cf. Bayless v. Estelle,* 583 F.2d 730 (5th Cir. 1978) (no constitutional right to credit for time served prior to sentencing); *Gremillion v. Henderson,* 425 F.2d 1293 (5th Cir. 1970) (no constitutional right to credit for time served prior to sentencing). *See also Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Niemann v. Parratt,* 596 F.2d 316, 319 (8th Cir. 1979).

er there are available state remedies.[10] This question could be framed as whether there is a means by which the instant plaintiffs can determine if they are or are not entitled to good time credit. The answer is yes. An action could be and should be brought by plaintiffs under Neb.Rev.Stat. § 25–21,150 which permits suit for a declaratory judgment to determine the constitutionality and validity of state statutes. *See, e. g., Meyerkooth v. State,* 173 Neb. 889, 115 N.W.2d 585, 588 (1962), *appeal dismissed,* 372 U.S. 705, 83 S.Ct. 1018, 10 L.Ed.2d 125 (1963); *Thorin v. Burke,* 146 Neb. 94, 18 N.W.2d 664, 665 (1945).

A third factor to be considered is whether the challenged state law is unclear.[11] The underlying question of state law in the instant case, whether plaintiffs are entitled to good time credits, has not been passed on by the state courts and resolution of that question is unclear. The Nebraska Sexual Sociopath Act has been held to be constitutional.[12] Neb.Rev.Stat. § 29–2901 *et seq.* And on their face the good time credit provisions appear to be constitutional. *See* Neb.Rev.Stat. § 83–1,106 *et seq.* But the issue in the instant case is whether the two statutes interact, or, more specifically, whether the good time credit provisions are applicable to those incarcerated under the Nebraska Sexual Sociopath Act. That issue has not been presented to the state courts.[13]

A fourth factor to consider is whether the challenged state law is fairly susceptible of an interpretation that would avoid any federal constitutional question.[14] In the instant case, the interaction between the Nebraska statutes providing for indeterminate sentencing under the Nebraska Sexual Sociopath Act and the statutes providing for good time credits is at issue. And the question of state law that may be dispositive of the case is: "Are the plaintiffs entitled to good time credits?" Defendant maintains they are not, but the issue has not been decided by the Nebraska Supreme Court. Indeterminate sentences have been upheld and the Nebraska courts may hold that plaintiffs' incarceration under the Sexual Sociopath Act is for the protection of society and that the state's interest in committing and detaining those likely to harm others is a sufficient rational basis for singling out those committed under the Sexual Sociopath Act for denial of good time credit. *Cf. State v. Irwin,* 191 Neb. 169, 214 N.W.2d 595 (1974); *State v. Madary,* 178 Neb. 383, 133 N.W.2d 583, 587 (1965). Similarly, the state courts may hold that since under the Sexual Sociopath Act sentencing for the underlying sexual offense occurs only after an individual is found to no longer be a sexual sociopath (Neb.Rev.Stat.

---

**10.** *See Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1972); *Conover v. Montemuro,* 477 F.2d 1073 (3d Cir. 1973).

**11.** For cases in which federal courts have declined to abstain because they found the state law clear, *see, e.g., Lecates v. Justice of Peace Court No. 4,* 423 F.Supp. 1379 (D.Del.1976); *Musselman v. Spies,* 343 F.Supp. 528 (M.D.Pa. 1972); *Keenan v. Board of Law Examiners,* 317 F.Supp. 1350 (E.D.N.C.1970).

For cases in which federal courts have abstained because they found either that the state law was unclear or that it had not been authoritatively construed by the state courts, *see, e.g., Connecticut State Fed'n of Teachers v. Board of Educ. Members,* 538 F.2d 471 (2d Cir. 1976); *Catrone v. Massachusetts State Racing Comm'n,* 535 F.2d 669 (1st Cir. 1976); *Blouin v. Dembitz,* 489 F.2d 488 (2d Cir. 1973).

**12.** *State v. Irwin,* 191 Neb. 169, 214 N.W.2d 595, 611 (1974). *See also Irwin v. Wolff,* 529 F.2d 1119 (8th Cir. 1976); *State v. Blythman,* 201 Neb. 285, 267 N.W.2d 525 (1978); *State v.*

*Little,* 199 Neb. 772, 261 N.W.2d 847, *appeal dismissed,* 439 U.S. 809, 99 S.Ct. 67, 58 L.Ed.2d 101 (1978); *State v. Madary,* 178 Neb. 383, 133 N.W.2d 583, 587 (1965).

**13.** Abstention on this basis is essentially the third abstention doctrine identified by Professor Wright. *See* note 1 *supra; e.g., Hall v. Garson,* 430 F.2d 430, 437 n.12 (5th Cir. 1970); *Urbano v. Board of Managers,* 415 F.2d 247, 254 (3d Cir. 1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970).

**14.** *See Hobbs v. Thompson,* 448 F.2d 456, 462 (5th Cir. 1971) (and cases cited therein); *Husbands v. Pennsylvania,* 359 F.Supp. 925 (E.D. Pa.1973); *Spencer v. Kugler,* 326 F.Supp. 1235, 1238 (D.N.J.1971), *aff'd,* 454 F.2d 839 (3d Cir.), *aff'd,* 404 U.S. 1027, 92 S.Ct. 707, 30 L.Ed.2d 723 (1972). *Compare Salvati v. Dale,* 364 F.Supp. 691 (W.D.Pa.1973), *with Campbell v. McGruder,* 580 F.2d 521 (D.C.Cir.1978).

§ 29–2903), and the act even provides commitment for individuals who have not been found guilty of committing sexual offenses (Neb.Rev.Stat. § 29–2909), the commitment is civil rather than criminal in nature and the good time credit provisions, which only apply to criminal incarcerations, were never intended to benefit those in plaintiffs' situation. That is to say the Nebraska courts may hold there is no right to good time credit where, as here, the purpose of incarceration is not punishment but treatment. Cf. State v. Little, 199 Neb. 772, 261 N.W.2d 847, 851, appeal dismissed, 439 U.S. 809, 99 S.Ct. 67, 58 L.Ed.2d 101 (1978); State v. Irwin, supra, 191 Neb. 169, 214 N.W.2d 595.

Moreover, the Nebraska courts may hold that just as good time credit cannot be calculated for those sentenced to life, it cannot be calculated for those sentenced under the Nebraska Sexual Sociopath Act. Cf. Niemann v. Parratt, 596 F.2d 316, 319 (8th Cir. 1979).

On the other hand, the good time credit provisions, Neb.Rev.Stat. § 83–1,106 et seq., allow credit for good time spent in custody prior to sentencing and the state courts might credit plaintiffs' time spent as a sexual sociopath against the sentence imposed when plaintiffs are sentenced on the underlying sexual offenses. The Nebraska courts may hold that Neb.Rev.Stat. § 29–2903–(3) ("The person in charge of the Nebraska Penal and Correctional Complex may extend to any defendant confined therein pursuant to 29–2901 to 29–2910 such privileges as are consistent with protection of the public interest."), either requires or permits the instant defendant to give plaintiffs any and all benefits of other confined individuals, including good time credit.

It is impossible to forecast whether the state courts will follow one of the above or some entirely different line of reasoning. Nevertheless, since the state courts may resolve the question in a way that will avoid or moot the federal constitutional claim of plaintiffs, the district court properly dismissed on the basis of Pullman-type abstention.

The last factor to consider is whether abstention will avoid unnecessary federal interference in state operations. Actually, two distinct considerations are involved here. First, is there an active state suit that will be disrupted? Federal court abstention because there is an ongoing state court action is typified by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[15] Younger notwithstanding, federal courts have specifically held that the discretionary power of the federal courts to abstain is not dependent upon there being a state court suit in progress.[16] A second consideration is whether federal intervention would interfere, not with a pending suit in the state courts, but rather with state procedures and policies in areas of special state interest. This element could be called comity or federalism.[17]

The record indicates no suit has yet been brought in the Nebraska courts, thus no interruption of an ongoing state judicial proceeding is threatened. Nevertheless, prison and parole policies are of great interest to the state and abstention would allow the state to first consider plaintiffs' claims, which revolve around unsettled questions of state law.

■ In conclusion, this case appears particularly appropriate for abstention. The interaction of two Nebraska statutes is

15. See also Anonymous J. v. Bar Ass'n, 515 F.2d 435 (2d Cir.), cert. denied, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975); Nevin v. Ferdon, 413 F.Supp. 1043 (N.D.Cal.1976); McGuire v. Iowa, 320 F.Supp. 243 (S.D.Iowa 1970); cf. Bonner v. Circuit Court, 526 F.2d 1331 (8th Cir. 1975), cert. denied, 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 rehearing denied, 425 U.S. 926, 96 S.Ct. 1525, 47 L.Ed.2d 773 (1976).

16. E. g., Weiner v. Shearson, Hammill & Co., 521 F.2d 817, 820 (9th Cir. 1975); Muskegon Theatres, Inc. v. City of Muskegon, 507 F.2d 199, 202 (6th Cir. 1974); Cristina v. Department of State, 417 F.Supp. 1012, 1018 (S.D.N.Y.1976).

17. See, e.g., Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); Pugh v. Rainwater, 572 F.2d 1053 (5th Cir. 1978); Neal v. Brim, 506 F.2d 6 (5th Cir. 1975); Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971).

questioned, the issue has not yet been presented to the state courts, and the issue may well be decided in a way that would avoid or moot any federal constitutional claims. We thus affirm the district court's dismissal without prejudice. If, after the issues are presented to the Nebraska state courts, plaintiffs have any federally-protected right that remains unredressed, they can return to federal court.[18]

It is so ordered.

---

18. Although we have tried to identify possible interpretations of the state law, nothing in the preceding paragraphs should be construed as our judgment on the merits of plaintiffs' claims. *See First Am. Bank & Trust Co. v. Ellwein*, 474 F.2d 933, 936 (8th Cir. 1973).