STATE OF NEBRASKA, APPELLEE, V. CHARLES LITTLE,
APPELLANT.

261 N. W. 2d 847

Filed January 18, 1978.   No. 41271.

Michael D. Gooch, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

The defendant, a 58-year-old male, was charged with indecent exposure and fondling the sexual organs of a minor boy under the age of 16 years. Following pleas of guilty to each count by the defendant, and at defendant's request, proceedings were initiated under sections 29-2901 to 29-2910, R. R. S. 1943, the Nebraska Sexual Sociopath Act. The trial court, pursuant to that statute, suspended further proceedings and ordered an examination of the defendant. The court found the defendant to be an un-

treatable sexual sociopath and committed him to the Nebraska Penal and Correctional Complex.

The medical and criminal history of the defendant-appellant was introduced at the trial. The defendant had twice been convicted and committed in other states for sexual offenses involving minor children. It is not necessary to detail the factual situation of this case except to state that the evidence that the defendant is a sexual sociopath is overwhelming.

The defendant does not allege error in the proceedings or in the determination that he is a sexual sociopath. His complaint is focused on the place of confinement and the uncertain duration of the confinement under the sexual sociopath statutes. The defendant's challenge to the constitutionality of the statutes rests on two alternative bases: (1) The indefinite term of commitment to the Nebraska penal complex was an enhancement of defendant's sentence which violates the defendant's right to equal protection of the law; and (2) an order of commitment to the Nebraska penal complex of a person who is determined to be a sexual sociopath for an indefinite period is in violation of the Constitution's clause against cruel and unusual punishment since it is punishment for a status or because it is disproportionate to the nature of the offense.

Before we proceed to address ourselves to defendant's arguments, we note that the constitutionality of the Sexual Sociopath Act was upheld by this court against a previous challenge in State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595. In Irwin, it was noted the defendant attacked the statute generally: "The claim of the defendant that the sexual sociopath act * * *, sections 29-2901 to 29-2910, R. S. Supp., 1972, is unconstitutional is lacking in specificity, except the inferential claim made in argument that the commitment constitutes cruel and unusual punishment." Our holding in Irwin as to constitutionality was lim-

ited to a discussion of the act as to procedural due process, the indefinite term of commitment, and the status of time of confinement spent under the act in relation to the sentence that could be imposed for the crime which triggered the proceedings. Here, the defendant raises specific issues of constitutionality that were not raised or decided in State v. Irwin, *supra.*

The defendant's equal protection argument is two-pronged. First, he claims he is denied equal protection because his sentence is enhanced under the sexual sociopath statute rather than the habitual offender statute. A person convicted of a third felony may have his punishment enhanced under the terms of sections 29-2221 and 29-2222, R. R. S. 1943, as a habitual criminal. The theory is that defendant's past crimes operate to aggravate his guilt to justify heavier penalties. See State v. Losieau, 184 Neb. 178, 166 N. W. 2d 406. The defendant concedes the constitutionality of the habitual offender statutes. See, State v. Martin, 190 Neb. 212, 206 N. W. 2d 856; Oyler v. Boles, 368 U. S. 448, 82 S. Ct. 501, 7 L. Ed. 2d 446. The defendant points out that while the habitual offender may have his penalty enhanced to a stated number of years, the sexual sociopath found to be untreatable may have the statutory penalty further increased, in effect, to a life sentence without possibility of parole. Thus, the defendant says since this condition is indistinguishable from the other, the differing treatment is violative of equal protection.

The placement of the sexual sociopath in a distinct category is a permissible classification. In State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N. W. 297, an alleged sexual psychopath, committed under Minnesota law, unsuccessfully challenged the sex offender law on an equal protection basis. The Minnesota Supreme Court held that the Equal Protection Clause did not prohibit a state from classify-

ing the sex offender in a special category, and providing special procedures for dealing with a person in this group where the behavior of the members showed that they were actually dangerous and incapable of controlling their sexual impulses. On appeal, the United States Supreme Court affirmed the decision of the Minnesota court. Minnesota ex rel. Pearson v. Probate Court, 309 U. S. 270, 60 S. Ct. 523, 84 L. Ed. 744.

Equal protection does not require that all persons be dealt with identically, but it does require that the distinction made have some relevance to the purpose for which the classification is made. Baxstrom v. Herold, 383 U. S. 107, 86 S. Ct. 760, 15 L. Ed. 2d 620. The question becomes whether the distinction of differing treatment made by the Legislature is reasonable in that it is relevant to the purpose of the initial classification. We hold that classification of sexual sociopaths apart from habitual criminals and the differing disposition it generates is a reasonable one. The classifications of habitual criminals and sexual sociopaths encompass groups of individuals with distinct characteristics. Habitual criminal laws provide that the repetition of criminal conduct aggravates the guilt and justifies greater punishment. State v. Losieau, *supra.* The sexual sociopath statutes, sections 29-2901 to 29-2910, R. R. S. 1943, proceed on the premise that the sexual sociopath is neither normal nor legally insane and on the idea that the commission of sex crimes is evidence of a mental disorder which should be treated if found treatable. The statutes provide that the offender, the sexual sociopath, shall be treated and held at the facility for treatment. If found to be untreatable and dangerous, the sexual sociopath is held at the Nebraska Penal and Correctional Complex separate from other prisoners. The purposes of the habitual offender law and the sexual sociopath law are alike in that both are for the protection of society. On the

one hand, the protection is from a dangerous criminal offender and on the other, from a person who is found to be dangerous to society by reason of his sexual proclivities. However, differing purposes are emphasized for the purposes of the incarceration. For the habitual offender, the purpose is punishment only; and for the sexual sociopath, the purpose is treatment, if possible, and only incidentally punitive. See State v. Irwin, *supra.*

The defendant's second equal protection argument relates to the confinement of incurably mentally ill, dangerous persons to the regional center as opposed to the sexual sociopath's confinement to the Nebraska Penal and Correctional Complex. We conclude again that these are distinct classifications marked by a distinguishing characteristic which is determinative. Section 29-2902, R. R. S. 1943, provides the sexual sociopath proceedings can only be triggered following a conviction of a crime of a sexual nature.

In Hill v. Burke, 289 F. Supp. 921, affirmed 422 F. 2d 1195, the court evaluated the Wisconsin sexual deviate law against an argument that the standards for discharge under the sexual deviate law were void under the Equal Protection Clause by reason of their failure to conform to the standards of classification of mentally ill dangerous persons. There, the court, in pointing out that the significant factor differing between the two was the fact of criminal conviction, stated: "The legislature has apparently concluded that the criminal conviction has some relevance to the determination of when an offender may be discharged without endangering the public. This conclusion is not unreasonable * * *." Here, we recognize the Legislature could have reasonably determined that the public health and safety required that those previously convicted on a sex offense and deemed untreatable may be appropriately held in the Nebraska Penal and Correctional Complex

rather than in the regional center due to the fact of the prior conviction of the crime.

Defendant's next assignment of error relates to the length of the possible duration of the confinement as constituting cruel and unusual punishment. In support of the contention, defendant first argues that the punishment of an untreatable sexual sociopath is punishment for a status and thereby violates Robinson v. California, 370 U. S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758. In Robinson, the defendant had been arrested after a police officer had observed needle marks on his arm. The defendant was convicted under a statute that made it an offense to use or be addicted to narcotics despite the fact that it was never proven the defendant had used drugs while in the jurisdiction. According to the United States Supreme Court, the effect of the statute was to allow a conviction for the mere status of addiction rather than for the actual use of drugs. It was suggested that punishment for the status of being addicted to drugs is just as repugnant to traditional ideas of fairness and justice as punishment for a physical illness such as leprosy or venereal disease or a mental illness. The court held that a status offense was one where there is no actus reus present and the imposition of any punishment for such an offense violates the cruel and unusual punishment prohibition of the Eighth Amendment.

We do not find Robinson v. California, *supra,* controlling on the issue of the constitutionality of confinement under Nebraska's Sexual Sociopath Act. As we have pointed out, section 29-2902, R. R. S. 1943, provides that a proceeding under the act may only be instituted following a criminal conviction. The conviction is the actus reus that was absent in Robinson v. California, *supra,* and distinguishes it from that case.

Powell v. Texas, 392 U. S. 514, 88 S. Ct. 2145, 20 L. Ed. 2d 1254, involved both a status and actus reus.

In Powell, the defendant had been arrested under a statute prohibiting public intoxication. Although Powell was an alcoholic and thus arguably stood in the position of a status offender, the United States Supreme Court affirmed the defendant's conviction for the act of public drunkenness. The court concluded that the conviction was for the prohibited act of public drunkenness and not for the status as an alcoholic since Powell could have drunk at home to avoid the criminal act.

Among the purposes of confinement under the sexual sociopath statute is punishment. State v. Irwin, *supra.* An individual included under the terms of the statute is designated a sexual sociopath, concededly a status. However, such status has manifested itself in affirmative criminal behavior. The criminal conviction is an inherent part of the statute. The recognition that the punitive aspect of confinement of the sexual sociopath flows directly from the conviction of a statutory crime is consistent with our holding in State v. Irwin, *supra.* In Irwin, we held: "* * * under the Act a defendant may not be confined for a period longer than the longer of the following: (1) The period during which he remains a sexual sociopath, or (2) the maximum term or terms authorized for the crime of which he was convicted and which triggered the initial indefinite commitment." In essence, the penalty that may be imposed for the criminal conviction merges with the period of confinement under the act. Thus, the punitive aspect of the Sexual Sociopath Act is not merely limited to punishment for a status, but relates to an affirmative act.

Defendant's major argument that the confinement of untreatable sexual sociopaths dictated by statute constitutes cruel and unusual punishment rests on the premise that the sentence is disproportionate to the nature of the offense. Defendant states correctly that the indeterminate confinement may well be

a life sentence. After the initial determination by the court of untreatability under section 29-2903 (3), R. R. S. 1943, the sexual sociopath is confined to the Nebraska Penal and Correctional Complex indefinitely without treatment.

As pointed out in State v. Irwin, *supra,* the statute does provide a procedure whereby a sexual sociopath may seek his release. Section 29-2906 (2), R. R. S. 1943, provides that: "A motion for a hearing to determine whether the defendant is a sexual sociopath may be made by or on behalf of the defendant at one-year intervals after initial commitment." A hearing may be held if the District Court determines that there is probable cause to believe that the defendant is no longer a sexual sociopath. The defendant is eligible for release only after a psychiatric evaluation shows that he is fit for discharge. He is still subject to sentence under the original criminal charge.

We cannot ignore the reality that, even with this procedure for discharge, the indefinite term of confinement may easily become a life sentence. Once the designation of untreatability is made, the statute places the sexual sociopath in legal limbo. The defendant is sent to a segregated portion of the penal complex with no evidence that he is given other than custodial care. By the terms of the statute, he is given no treatment. He is expected to bear the burden of proving he has somehow recovered in the vacuum situation in which the statute places him.

A proceeding for investigation and for commitment of an alleged sexual sociopath is civil in nature. State v. Madary, 178 Neb. 383, 133 N. W. 2d 583. The nature and duration of civil commitment must bear some reasonable relation to the purpose for which an individual is committed. Jackson v. Indiana, 406 U. S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435. We stated earlier that the purpose that differentiates the Sexual Sociopath Act from a criminal statute is

the element of treatment. Despite the labeling of the initial commitment as civil, the statutes' provisions for possible life confinement, without any provisions for treatability or review of treatability, make the statutes penal in nature.

Defendant relies on In re Lynch, 8 Cal. 3d 410, 105 Cal. Rptr. 217, 503 P. 2d 921, to support his contention of disproportionate punishment. In Lynch, the defendant was convicted of second offense indecent exposure, punishable as a felony by an indeterminate period of 1 year to life imprisonment. The California Supreme Court held that the sentence was so disproportionate to the underlying offense as to constitute cruel and unusual punishment.

We feel a case decided by the California Supreme Court after In re Lynch, *supra,* is more applicable to the issue here. In People v. Feagley, 14 Cal. 3d 338, 121 Cal. Rptr. 509, 535 P. 2d 373, the court made reference to its holding in In re Lynch, *supra,* by stating that the issue before it was "whether the state may achieve essentially the same result by the device of declaring the person to be a 'mentally disordered sex offender' and 'civilly' committing him for an indefinite period to an 'institutional unit' on the grounds of a prison." The court concluded that such confinement is likewise unconstitutional, both because of its undeniable prison setting and because of the admitted lack of treatment provided to those so detained.

The defendant Feagley was arrested for stroking the hair and necks of two 8-year-old girls. He pleaded guilty to simple assault. Feagley admitted, and the evidence showed, he had been involved in similar incidents in the past. He was found to be a mentally disordered sex offender within the meaning of the applicable California statute. Following determination by the court that he was both dangerous and untreatable, the defendant was civilly committed for an indefinite period to the California

Men's Colony, a state penal institution under the Department of Corrections. The institution had no facilities for providing treatment for mentally disordered patients; however, the sex offender could voluntarily enter group counseling which was conducted in weekly 75-minute sessions by a counselor of limited experience.

The California court held that while, in name, the commitment was a civil proceeding, in actuality, it was penal in nature. The court noted that the sex offender law is designed to serve both legislative aims of rehabilitation and protection of society and then reviewed the actual conditions of confinement. "Whatever the theory of such confinement, its reality is therefore indistinguishable from penal custody."

The court reached its conclusion by first confronting the issue of the place of confinement. The statute dictated that a mentally disordered sex offender be placed in an institutional unit "on the grounds of a state prison." The evidence showed that the unit, although separate, "was administered in the same manner as the rest of the prison. Furthermore, the rules and regulations governing the institutional unit are made by the Director of Corrections." Here, the defendant challenges the place of confinement generally, but offers no evidence as to the actual conditions of confinement. The Nebraska statute, section 29-2903 (3), R. R. S. 1943, provides that the untreatable sexual sociopath be committed "for an indefinite period in the Nebraska Penal and Correctional Complex which shall make adequate provisions to separate such defendant from the regular prison population, and to detain, house, and care for him while he is in the complex. * * * The person in charge of the Nebraska Penal and Correctional Complex may extend to any defendant confined therein pursuant to sections 29-2901 to 29-2910 such privileges as are consistent with protecting the pub-

lic interest." The fact of housing within the confines of a prison does not in and of itself make the provision constitutionally suspect. If the sexual sociopaths are indeed segregated from the rest of the prison population, defendant's challenge is without merit. See, In re Maddox, 351 Mich. 358, 88 N. W. 2d 470; Commonwealth v. Page, 339 Mass. 313, 159 N. E. 2d 82. We have no evidence before us that the sexual sociopaths are, in actuality, not segregated from the general prison population.

In Feagley, the California court next considered the issue of lack of treatment. The California statute provided for annual review of the case of each mentally disordered sex offender to determine whether he might have become "amenable" to treatment in a hospital facility. The court held that this was not enough — confinement without treatment for any length of time constitutes cruel and unusual punishment. The court based the holding on the finding that without ongoing treatment, the confinement of the untreatable sexual sociopath is punishment for a status under Robinson v. California, *supra,* without mention of Powell v. Texas, *supra.*

We do not embrace the California court's status rationale since, as we held earlier, we do not believe the Nebraska statute constitutes punishment merely for status. However, we agree with the California court that treatment is a necessary part of a statutory scheme involving sexual sociopaths. The Nebraska statute has no provision for even review of treatability once the initial determination of untreatability is made. As defendant points out, under the terms of the Sexual Sociopath Act: "For appellant and other untreatable sexual sociopaths, even the milieu of hope and opportunity of a treatment facility is foreclosed." Thus, without more, the untreatable sexual sociopath faces a probable life sentence. As such, the statute is penal in nature and

the sentence under it is so disproportionate to the offense committed in this case as to constitute cruel and unusual punishment.

Section 29-2903 (3), R. R. S. 1943, says the Nebraska Penal and Correctional Complex shall "detain, house, and care" for the sexual sociopath when he is in the penal complex. The "care" of such an individual must include, at the very least, some effort to make the possibility of treatment open to him. Thus, we hold that an annual evaluation by qualified professional personnel must be made of each sexual sociopath housed in the penal complex and an annual review of treatability be made by the District Court from which such individual was originally committed.

AFFIRMED.