TERRY G. PARKER, APPELLANT, V. RICHARD ROTH, SHERIFF OF DOUGLAS COUNTY, NEBRASKA, APPELLEE.

278 N. W. 2d 106

Filed April 3, 1979. No. 42561.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein, for appellant.

Tim Sindelar of Smith, Sindelar, Smith & Gooch, for amicus curiae, Nebraska Civil Liberties Union.

Paul L. Douglas, Attorney General, Terry R. Schaaf, Paul E. Hofmeister, and Lynne Rae Fritz;

Donald L. Knowles, Douglas County Attorney, and Rockford G. Meyer, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

By this appeal appellant, Terry G. Parker, attacks the constitutionality of Article I, section 9, of the Constitution of the State of Nebraska, as the same was amended by vote of the people on November 7, 1978 (1978 bail amendment). Article I, section 9, of the Nebraska Constitution now provides as follows: "All persons shall be bailable by sufficient sureties, except for treason, sexual offenses involving penetration by force or against the will of the victim, and murder, where the proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The amendment added the phrase "sexual offenses involving penetration by force or against the will of the victim" to an article which otherwise has existed since the Nebraska Constitution was first adopted. For reasons set out herein, we find that the 1978 bail amendment is in all respects valid and we affirm the decision of the District Court for Douglas County, Nebraska, denying bail to appellant.

As the basis for his attack on the constitutionality of Article I, section 9, appellant maintains (1) That the 1978 bail amendment violates the excessive bail prohibition of the Eighth Amendment to the United States Constitution; (2) that the 1978 bail amend-

ment violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (3) that the 1978 bail amendment violates appellant's presumption of innocence protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (4) that the 1978 bail amendment violates appellant's rights to the effective assistance of counsel and to freedom to prepare his defense under the Sixth and Fourteenth Amendments to the United States Constitution; and (5) that the 1978 bail amendment violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

For purposes of this appeal the facts have been stipulated by the parties. Therefore, no factual dispute exists. On April 21, 1978, L. B. 553 was enacted by the Nebraska Legislature, proposing, subject to approval by the electorate, that Article I, section 9, of the Constitution of the State of Nebraska be amended to further exclude from bail persons charged with "sexual offenses involving penetration by force or against the will of the victim" where the proof was evident or the presumption great. Prior to that time under Article I, section 9, of our State Constitution only treason and murder were nonbailable offenses where the proof was evident or the presumption great. On November 7, 1978, the people of the State of Nebraska duly enacted the proposed amendment by a vote of 355,949 in favor and 79,179 opposed.

Appellant in this case was charged with having subjected another person to sexual penetration by force, threat of force, or implied coercion or deception on January 10, 1979. Appellant, after entering a plea of not guilty, sought release on bail. The municipal court for the City of Omaha, Nebraska, denied the request on the basis that Article I, section 9, of the Constitution of Nebraska did not permit bail in a case of this nature.

Appellant then filed a petition for writ of Habeas

Corpus, in the District Court for Douglas County, Nebraska, alleging that he was being unlawfully imprisoned and deprived of his liberty by virtue of the court's refusal to set bail. Following hearing, the District Court for Douglas County, Nebraska, concluded that Article I, section 9, of the Constitution of Nebraska was valid and denied bail to the appellant. From that order denying bail appellant has appealed to this court. Without admitting his guilt, appellant has stipulated for purposes of this appeal that the proof was evident or the presumption was great that appellant committed a sexual offense involving penetration by force or against the will of the victim.

The Supreme Court of the United States has never expressly held the Eighth Amendment to the Constitution of the United States binding on the states through the Fourteenth Amendment. However, in State v. Pilgrim, 182 Neb. 594, 156 N. W. 2d 171, we have held the federal prohibition against excessive bail applicable to the states. See Mastrian v. Hedman, 326 F. 2d 708 (8th Cir., 1964). We examine this appeal as if the Eighth Amendment did apply to the states.

We turn first to appellant's contention that Article I, section 9, of the Constitution of Nebraska violates the Eighth Amendment to the United States Constitution. Neither a reading of the provisions of the Eighth Amendment nor an examination of the history of bail, either in this country or in Europe, leads to the conclusion urged by appellant.

The Eighth Amendment to the United States Constitution provides as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Nothing contained in that single sentence can sustain an argument that bail is required in every case.

Appellant has directed our attention to an extensive, two-part law review article on the subject by Professor Caleb Foote, entitled "The Coming Consti-

tutional Crisis in Bail: I and II," 113 U. Pa. L. Rev. 959 and 1125 (1965). Professor Foote therein maintains that early English bail history and early American bail history lead to the inescapable conclusion that the language of the Eighth Amendment requires the granting of bail in every case. After careful review of the arguments contained in Professor Foote's law review article and reviewing the history of the Eighth Amendment, we are of the opinion that such a conclusion cannot be reached.

Certainly the plain meaning of the words of the Eighth Amendment does not support the position that bail is required in all cases. Even appellant acknowledges this. In his brief appellant argues: "With the exception of capital offenses, and possibly noncapital murder and treason, wholesale legislative denial of bail to an entire class of criminal defendants charged with any given lesser offense is constitutionally impermissible." Appellant acknowledges that capital offenses and noncapital murder may be made nonbailable. Yet we find nothing in the Eighth Amendment which would exclude capital offenses and noncapital murder. Either the Eighth Amendment by its language requires bail in all cases or the Eighth Amendment by its language does not require bail in any case. The plain words of the Eighth Amendment merely stand for the proposition that if the legislative body has provided that certain offenses be bailable, the court may not in effect deny defendant's freedom through imposing an excessive amount of bail. That is not to say that the denial of bail in all instances may not be a violation of some other provision of either the federal Constitution or our state Constitution. It is simply to say that the Eighth Amendment to the federal Constitution does not stand for the proposition that one has a constitutional right to bail.

If one examines the history of bail in Europe as well as in this country at the time of the adoption of

the Constitution of the United States and the amendments thereto, one is further convinced that the Eighth Amendment was not intended to guarantee bail in all cases. For an extensive and detailed analysis of the history of bail, see a two-part article by Meyer, "Constitutionality of Pretrial Detention," 60 Geo. L. J. 1139 and 1382; and Duker, "The Right to Bail: a Historical Inquiry," 42 Alb. L. Rev. 33 (1977).

In summary, an examination of the early history of bail, particularly in England, discloses that there was no right to bail, such concept not being a part of the English legal system. The history of the English Star Chamber where prisoners were held indefinitely and tried in secret is well known to any student of the law. In 1641, the Long Parliament, which initiated the Cromwell Revolution, passed an act to abolish the Court of the Star Chamber. 16 Car. 1,c.10(1640). The act further provided that if a person was imprisoned by any court exercising jurisdiction similar to the Star Chamber, such person could file a motion with the judges of the Court of King's Bench or Common Pleas for a writ of Habeas Corpus upon payment of ordinary fees. The prisoner was then brought before the court which by law was required to examine the facts and do justice "either by delivering, bailing or remanding the prisoner." The act did not, however, grant an absolute right to bail.

In an effort to avoid the provisions of this act, the Stuarts found indirect ways to imprison persons found politically objectionable for considerable periods of time by taking advantage of defects in the Act. To remedy these defects, the Habeas Corpus Act of 1679 was enacted. 31 Car. 2, c. 2 (1679). A reading of the Habeas Corpus Act of 1679 discloses, however, that it did not grant a right to bail in every case. It merely enabled a prisoner, before conviction, except one committed for treason *or felony*, to secure an early appearance before the chancellor or a judge and a discharge upon bail if the return

showed that by law the offense was bailable. In an effort to get around the Habeas Corpus Act, judges simply imposed excessive bail, thereby again preventing the release of persons charged with bailable crimes. By imposing excessive bail, judges made the Habeas Corpus Act inoperative with respect to those prisoners whom the King did not want released. It was this abuse of the Habeas Corpus Act that caused the Bill of Rights of 1689 to be enacted. Said Bill of Rights of 1689 provided "that excessive bail ought not to be required * * *." 1 W. & M., § 2, c. 2 (1689).

The framers of the Constitution were well aware of the problems of bail in England, and could quite easily have provided that bail should be permitted for all offenses had they so intended. They were not, however, attempting to provide a new right in the new country, but instead were transferring an accepted, recognized principle that if an offense was bailable, the individual's right to freedom could not be defeated by requiring bail in excessive amounts.

This is further established by examining the history of bail as it existed in the colonies at the time the Constitution was being drafted. Some colonies enacted laws providing for bail early in their history. Massachusetts did so in 1641, Pennsylvania in 1682, and New York in 1683. 60 Geo. L. J. 1140 at p. 1191. The framers of the Constitution and the members of the first Congress knew exactly how to provide for bail in such cases as determined by the legislative body. Yet with that knowledge they made no such provision in either the Constitution or the amendments. History discloses that there was no constitutional right to bail in England, nor was there any constitutional right to bail in the colonies, nor had there ever been such an absolute guaranteed right known in any Anglo-American jurisprudence prior to the adoption of the Bill of Rights.

When Congress met to adopt the Bill of Rights in

June of 1789, an amendment was suggested which read: "Excessive bail shall not be required * * *." It would have taken little imagination or draftsmanship to simply provide, as had earlier been provided in certain of the colonies, that "bail shall be allowable in all cases except * * *." Having failed to do so, it must be concluded that they did not intend to grant bail in every case through the provisions of the Eighth Amendment.

In any event, the history of bail does not disclose how or in what manner the exceptions, for murder or treason, found in most state constitutions can be read into the Eighth Amendment. Once a recognition that legislative bodies had the right to exclude murder, treason, or capital offenses from bail is made, one is left with the inescapable conclusion that the Eighth Amendment simply prohibited excessive bail *where* allowed and did not guarantee the right to bail in every instance.

What was a capital offense at the time this country was founded is far different from that which is so included today. As an example, the capital laws of colonial Massachusetts included idolatry, witchcraft, blasphemy, willful murder, slaying in anger or cruelty of passion, poisoning, beastiality, sodomy, adultery, man stealing, false witness, conspiring or attempting invasion, insurrection, or public rebellion against the Commonwealth, or treacherously attempting the alteration or subversion of the frame of government, a child over 16 years old cursing or smiting his parent, a son over 16 rebelling against his parents, or rape. See Laws and Liberties Concerning the Inhabitants of Massachusetts, 5 M. Farrand, (1648). There is nothing in the history of our laws, including the ordinance to govern the Northwest Territory (an Ordinance for the Government of the Territory of the United States Northwest of the River Ohio, July 13, 1787, art. ii), which would support the claim that bail had historically and tradi-

tionally been a guaranteed constitutional right or was intended to be such a right under the Eighth Amendment to the Constitution of the United States.

Though this country is now more than 200 years old, there appears to have been no case directly decided by the United States Supreme Court on this issue. In 1951 the United States Supreme Court decided two cases, Stack v. Boyle, 342 U. S. 1, 72 S. Ct. 1, 96 L. Ed. 3; and Carlson v. Landon, 342 U. S. 524, 72 S. Ct. 525, 96 L. Ed. 547. Appellant argues that Stack v. Boyle, *supra*, established the principle that bail is a constitutionally guaranteed right. While it is true that one may find comfort in language contained in the Stack decision, *supra*, a careful reading of the decision discloses that, at best, the declaration is obiter dictum and unsupported by the law. Stack did not involve the denial of bail. It involved the question of excessive bail; therefore, any language in the opinion announcing a "traditional right to freedom before conviction" is without legal support and was not at issue in the case. The opinion specifically recognizes that the right to bail is as provided by law and not by any inherent constitutional right. Mr. Chief Justice Vinson, therein, said: "From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46 (a) (1), *federal law* has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail." (Emphasis supplied.) It must therefore be kept in mind that the Chief Justice recognized the right to bail had its inception in the Judiciary Act of 1789, and not in either the Constitution of the United States or the amendments thereto. For that reason we do not believe that Stack v. Boyle, *supra*, is authority for the proposition that a constitutional right to bail exists.

Carlson v. Landon, *supra*, on the other hand, did involve the denial to bail. In an opinion by Mr. Justice Reed in which Mr. Chief Justice Vinson joined,

the court addressed the Eighth Amendment argument saying "The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country. Thus in criminal cases bail is not compulsory where the punishment may be death. Indeed, the very language of the Amendment fails to say all arrests must be bailable. We think, clearly, here that the Eighth Amendment does not require that bail be allowed under the circumstances of these cases." In Mastrian v. Hedman, *supra*, cert. denied, 376 U. S. 965, 84 S. Ct. 1128, 11 L. Ed. 2d 982, the question of a constitutional right to bail was addressed. "Neither the Eighth Amendment nor the Fourteenth Amendment requires that everyone charged with a state offense must be given his liberty on bail pending trial. While it is inherent in our American concept of liberty that a right to bail shall generally exist, this has never been held to mean that a state must make every criminal offense subject to such a right or that the right provided as to offenses made subject to bail must be so administered that every accused will always be able to secure his liberty pending trial. Traditionally and acceptably, there are offenses of a nature as to which a state properly may refuse to make provisions for a right to bail." See, also, Turco v. State of Maryland, 324 F. Supp. 61 (D. Md., 1971). In view of these authorities, we must reject appellant's contention that the 1978 bail amendment violates the excessive bail prohibition of the Eighth Amendment.

We turn then to appellant's second contention that

the 1978 bail amendment is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. It should be kept in mind that we are here examining the constitutionality of a provision of the Nebraska Constitution approved by an overwhelming vote of the people. We recognize that " 'one's right to life, liberty, and property * * * and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.' " Nor can a citizen's constitutional rights be infringed simply because a majority of the people choose that it be. Lucas v. Colorado General Assembly, 377 U. S. 713, 84 S. Ct. 1472, 12 L. Ed. 2d 632. Yet we have said that it is incumbent on this court, when reasonably possible and consistent with constitutional rights, to resolve all doubts as to a statute in favor of its constitutional validity. If possible, a statute should be construed in such a way as to negative any constitutional infirmity. Prendergast v. Nelson, 199 Neb. 97, 256 N. W. 2d 657. If such rule properly applies to a statute adopted by the Legislature, all the more should it apply to an amendment to the Constitution approved by an overwhelming majority of the people.

Over the years the United States Supreme Court has developed specific rules for determining whether state laws deny any citizen the equal protection of the law guaranteed by the federal Constitution. Under the traditional standard of judicial review of state action, a state's laws are accorded a presumption of constitutionality. Only where the state action impinges upon the exercise of fundamental constitutional rights or liberties must the state be found to have chosen the least restrictive alternative in so acting. The traditional standard of review of a state law under the Equal Protection Clause of the Fourteenth Amendment requires only that the state law be shown to bear some rational relationship to legitimate state purposes. See San Antonio School

District v. Rodriguez, 411 U. S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16.

The decisions of the United States Supreme Court reviewing state action as it related to the Equal Protection Clause of the United States Constitution discloses that there are basically two tests. If the matter involved is a "fundamental right" guaranteed by the Constitution of the United States, then the court will engage in a strict judicial scrutiny of the act in question. Massachusetts Board of Retirement v. Murgia, 427 U. S. 307, 96 S. Ct. 2562, 49 L. Ed. 2d 520. On the other hand, if the state action under examination is not a "fundamental right" guaranteed by the Constitution of the United States, the court merely examines the matter in question to determine whether there is a rational basis for the classification which does not involve either a "fundamental constitutionally guaranteed right" or involve a "suspect class." See Shapiro v. Thompson, 394 U. S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600; Griswold v. Connecticut, 381 U. S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510; Baker v. Carr, 369 U. S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663; Terminiello v. Chicago, 337 U. S. 1, 69 S. Ct. 894, 93 L. Ed. 1131; Prince v. Massachusetts, 321 U. S. 158, 64 S. Ct. 438, 88 L. Ed. 645; Nyquist v. Mauclet, 432 U. S. 1, 97 S. Ct. 2120, 53 L. Ed. 2d 63; Graham v. Richardson, 403 U. S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534; Loving v. Virginia, 388 U. S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010; Bolling v. Sharpe, 347 U. S. 497, 74 S. Ct. 693, 98 L. Ed. 884. See, also, Voichahoske v. City of Grand Island, 194 Neb. 175, 231 N. W. 2d 124.

In view of what we have said about the history of bail under the Eighth Amendment to the Constitution of the United States, we must conclude that the right to bail is not a fundamental right guaranteed under the Constitution. That is not to say that under every circumstance a denial of bail will have a rational basis and therefore not be violative of the

right to equal protection of the law. In this case, however, we are unable to conclude that the right to bail is a constitutionally guaranteed fundamental right requiring strict scrutiny on review or that there is no rational basis for the action taken.

The United States Supreme Court has held that it is not the province of that court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws. If there is to be such a fundamental right, it must be found to be either explicitly or implicitly guaranteed by the Constitution. San Antonio School District v. Rodriguez, *supra*. We find nowhere in the Constitution that a right to bail is guaranteed. The strict scrutiny test is thus inapplicable to the present case.

If, under the circumstances, the strict scrutiny rule is not applicable, state legislatures will be presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. See McGowan v. Maryland, 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393.

The fact that the bail amendment may affect a particular class of person charged with a crime differently than it affects other persons charged with other crimes does not of itself violate the guarantee to equal protection of the laws.

"The standards under which this proposition [the Equal Protection Clause] is to be evaluated have been set forth many times by this [the United States Supreme] Court. Although no precise formula has been developed, the court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the

achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, *supra*; Kotch v. Riverport Pilot Comrs., 330 U. S. 552, 67 S. Ct. 910, 91 L. Ed. 1093; Metropolitan Co. v. Brownell, 294 U. S. 580, 55 S. Ct. 538, 79 L. Ed. 1070; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369. The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. Tigner v. Texas, 310 U. S. 141, 60 S. Ct. 879, 84 L. Ed. 1124. Evils in the same field may be of different dimensions and proportions requiring different remedies or so the Legislature may think. McGowan v. Maryland, *supra*. "[T]he reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. * * * The legislature may select one phase of one field and apply a remedy there, neglecting the others." Williamson v. Lee Optical of Okla., Inc., 348 U. S. 483, 75 S. Ct. 461, 99 L. Ed. 563. "No finicky or exact conformity to abstract correlation is required of legislation. The Constitution is satisfied if a legislature responds to the practical living facts with which it deals. Through what precise points in a field of many competing pressures a legislature might most suitably have drawn its lines is not a question for judicial reexamination. It is enough to satisfy the Constitution that in drawing them the principle of reason has not been disregarded." McGowan v. Maryland, *supra*.

"Unlike other provisions of the Constitution, the Equal Protection Clause confers no substantive rights and creates no substantive liberties. The function of the Equal Protection Clause, rather, is simply to measure the validity of *classifications* cre-

ated by state laws. There is hardly a law on the books that does not affect some people differently from others. But the basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes. And with respect to such legislation, it has long been settled that the Equal Protection Clause is offended only by laws that are invidiously discriminatory—only by classifications that are wholly arbitrary or capricious." See concurring opinion of Mr. Justice Stewart, San Antonio School District v. Rodriguez, *supra*.

We have likewise recognized that distinctions and classifications may be appropriate. Such distinctions do not, of themselves, result in a denial of equal protection. The appropriate examination when a state statute operates to single out a class of people for special treatment is whether the classification bears some rational relationship to the legitimate purposes of the legislation. Botsch v. Reisdorff, 193 Neb. 165, 226 N. W. 2d 121. A class need not be all inclusive. The Legislature is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. The classification may be, to some extent, arbitrary in its nature, but it is difficult to draw the line. The court does not sit to review the wisdom of legislative acts. Bridgeford v. U-Haul Co., 195 Neb. 308, 238 N. W. 2d 443. The Equal Protection Clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all. It is enough that the state's action be rationally based and free from invidious discrimination. Botsch v. Reisdorff, *supra*; Prendergast v. Nelson, 199 Neb. 97, 256 N. W. 2d 657. Equal protection does not require that all persons be dealt with identically, but it does require that the distinction may have some relevance to the purpose for which the classification is made. State

v. Little, 199 Neb. 772, 261 N. W. 2d 847.

With these various principles in mind we examine the provisions of Article I, section 9, of the Nebraska Constitution as amended to determine if a rationale existed for the Legislature's action as ratified by the people.

It should be clearly recognized that the 1978 bail amendment does not prohibit bail in every case where an individual is charged with a sexual offense involving penetration by force or against the will of the victim. In order for one so charged to be ineligible for bail, it must appear to the trial court that either the proof of the charge is evident or the presumption great. In any instance in which the court is not convinced that either the proof is evident or the presumption great, then the court is not prohibited from granting bail. A claim that the mere filing of a charge denies the individual his right of liberty is not supported by a reading of the 1978 bail amendment. It is clear that bail can only be denied if the proof is evident or the presumption great. A frivolous charge will not result in an individual being incarcerated so long as he demands a bail hearing.

We are therefore left with the question of whether the Legislature in the first instance, and the people thereafter, acted rationally and reasonably in concluding that, where the proof was evident or the presumption great that an individual had committed a sexual offense involving penetration by force or against the will of the individual, such person should not be free on bail pending trial.

Certainly the record before us would not in any manner disclose that the classification was unreasonable. Forcible rape has been recognized as a heinous crime committed not by one seeking sexual gratification but rather by one disposed to violence and seeking to inflict harm and violence upon the victim. See Groth, et al. "Rape: Power, Anger,

and Sexuality," 134 Am. J., Psychiatry, p. 1239; Gebhard, "Sex Offenders," Harper and Rowe (1965). The victim of a violent forceful rape is not easily rehabilitated. Rape victims are often emotionally scarred for long periods of time, if not for life. Rape is one of the ugliest of crimes. Its very nature is humiliating to the victim and it is frequently accompanied by violence, forced sodomy, and similar acts that additionally traumatize and humiliate. The victimization of the woman does not necessarily cease with the termination of the attack itself. Pregnancy, venereal disease, hospitalization, loss of employment, imputations of wantonness and even ostracism by family or neighbors may follow. See "Rape and its Victims, a Report for Citizens, Health Facilities and Criminal Justice Agencies," National Institute of Law Enforcement and Criminal Justice, Law Enforcement Assistance Administration, U. S. Department of Justice (1975). Rape is a violent crime because it normally involves force, or the threat of force, or intimidation to overcome the will and the capacity of the victim to resist. Rape is very often accompanied by physical injury to the female and can also inflict mental and psychological damage. See, Note, The Victim in a Forcible Rape Case: A Feminist's View, 11 Am. Crim. L. Rev. 335; Comment, Rape and Rape Laws: Sexism in Society and Law, 61 Cal. L. Rev. 919. The nature of the injury, both physically and emotionally, often committed on a rape victim is of concern to the state. Rape victims often are unable to return to the mainstream of life and more often than not require extensive therapy and counseling. The state does have a legitimate concern in this area. Nor can we say either under the record as we have it or by common knowledge, that the Legislature was wrong in believing that violent rapists repeat their crimes, motivated by emotional forces over which they have no control. See State v. Sell, *ante* p. 840,

277 N. W. 2d 256. In our view, it is not without rational basis for the Legislature and the people to want to protect society by removing therefrom persons accused of violent rape where the proof is evident or the presumption is great. On balance, such a decision does not appear unreasonable. We cannot say that the Legislature in the first instance and the people thereafter were without any rational basis in suggesting that a person who has committed a violent, psychologically motivated crime is not as likely to commit a similar crime while free on bail.

We totally reject the notion that rape is not a serious crime. Next to murder there is none which ranks higher; and for reasons which we have already noted, perhaps in some cases, death itself would be easier for the victim to handle than continued life. Appellant argues that denial of bail may be acceptable in a noncapital murder, but not in rape. Appellant's basis for that position is that there are crimes which are punishable by far more severe penalties than rape, but are yet crimes which are bailable. We do not accept that argument. The minimum penalty is not the issue in a determination that violent rape, where the proof is evident or the presumption is great, should not be bailable. The real possibility of repeated acts and further victims pending trial is the issue. Society deserves more. In noncapital murder the penalty may be a statutory sentence of as little as 10 years and actual incarceration for something less. § 28-402, R. R. S. 1943. Would anyone suggest that the denial of bail where one is merely charged with murder, including murder in the second degree, would be a violation of the Equal Protection Clause? We think not, and likewise we think it cannot be said that there is no rational basis for the denial of bail in a forcible rape case where the proof is evident or the presumption great. We therefore hold that Article I, section 9, of the Nebraska Constitution as amended does not vio-

late the Equal Protection Clause of the Constitution of the United States.

Appellant further maintains that the 1978 bail amendment violates appellant's presumption of innocence protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. With that position we do not agree. Presumption of innocence has nothing to do with confinement or release prior to trial. Presumption of innocence is only a recognition that, under our American jurisprudence, one charged with a criminal offense is presumed innocent until proven guilty beyond a reasonable doubt. State v. Fisher, 190 Neb. 742, 212 N. W. 2d 568. Where a plea of not guilty is interposed by defendant in a criminal trial, he is clothed with the presumption of innocence which stands as evidence in his favor. Such presumption remains until the state, by the evidence it presents, shows defendant to be guilty beyond a reasonable doubt. The burden of furnishing such proof is with the prosecution throughout the trial and never shifts. State v. Hizel, 179 Neb. 661, 139 N. W. 2d 832; Bourne v. State, 116 Neb. 141, 216 N. W. 173. It is the constitutional right of a defendant to rely upon this presumption of innocence and to require the state to prove (1) that he committed the act charged; and (2) his legal culpability, if that is also an issue. State v. Simants, 194 Neb. 783, 236 N. W. 2d 794.

Whether the defendant is released on bail pending trial has no relationship to the presumption of innocence he is clothed in. One charged with murder, a nonbailable offense, enjoys the presumption of innocence. Likewise, one eligible for bail who cannot make bail, enjoys the presumption of innocence. We are unable to see how one confined to jail loses a presumption of innocence because of his incarceration. We therefore reject appellant's claim that the 1978 bail amendment violates appellant's presumption of innocence.

Appellant further argues that the 1978 bail amendment violates his rights to the effective assistance of counsel and to freedom to prepare his defense under the Sixth and Fourteenth Amendments to the United States Constitution. The Sixth Amendment does not in any manner guarantee to the accused the unlimited right to prepare his own defense, including the right to come and go as he pleases. As we have pointed out in this opinion, in the most serious of crimes, murder, the defendant is not granted the right to bail. If indeed it is a constitutional right as suggested by appellant, would it not all the more be required in the case of one charged with murder and subject to possible execution upon conviction? Clearly this would follow, yet no such requirement exists. The same may be said of those individuals charged with lesser crimes who are unable to make bail. In the absence of such requirements, we must find that appellant's claim with regard to the denial of effective assistance of counsel is without support.

Finally, appellant maintains that the 1978 bail amendment constitutes cruel and unusual punishment. It was early recognized that detention is a usual feature of every case of arrest on a criminal charge, even when an innocent person is wrongfully accused; but it is not imprisonment in a legal sense. Wong Wing v. United States, 163 U. S. 228, 16 S. Ct. 977, 41 L. Ed. 140. Confinement, where the proof is evident or the presumption great that the individual has committed a sexual offense involving penetration by force or against the will of the victim, is not cruel and unusual punishment because at that point under our system of jurisprudence it is not punishment. It cannot constitute punishment unless and until defendant, having been found guilty, is sentenced. See McGinnis v. Royster, 410 U. S. 263, 93 S. Ct. 1055, 35 L. Ed. 2d 282. Likewise, not every restraint of movement or liberty constitutes punishment. See, also, Nebraska sexual sociopath laws, §§

29-2901 et seq.; 83-306, R. R. S. 1943; State v. Little, *supra*.

We have carefully and thoughtfully examined the 1978 bail amendment to the Nebraska Constitution in light of the attack raised by the appellant. We believe that there does in fact exist a reasonable and rational basis for the action by the Legislature and by the people of the State of Nebraska. While there may be disagreement among groups as to this question and there may be those who would take issue with the solution proposed or the scope of its effect, it cannot be said that no rational basis exists. In view of what we have here said, in light of the legal principles under which this matter must be decided, we find that the 1978 bail amendment to the Nebraska Constitution, Article I, section 9, is in all respects valid and proper. It therefore meets all the constitutional tests under both the Constitution of the State of Nebraska and the Constitution of the United States. Based upon the stipulation entered into in this case, appellant was not eligible for bail and the judgment of the trial court was correct. Judgment is affirmed.

AFFIRMED.

McCOWN, J., concurring in result.

The majority opinion asserts that a "right to bail" does not involve a "fundamental right" guaranteed by the Constitution of the United States. It is clear that a denial of any "right to bail," of necessity, involves a loss of liberty and that the constitutional guaranty that no person shall be deprived of liberty without due process of law is a "fundamental right." The United States Supreme Court said: "From the passage of the Judiciary Act of 1789 * * * to the present Federal Rules of Criminal Procedure * * * federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional *right to freedom* before conviction permits the unhampered preparation of a de-

fense, and serves to prevent the infliction of punishment prior to conviction." (Emphasis supplied.) Stack v. Boyle, 342 U. S. 1, 72 S. Ct. 1, 96 L. Ed. 3. The right to bail is a "fundamental right" of every person, and any constitutional or legislative enactment dealing with it must be strictly construed.

Article I, section 9, of the Nebraska Constitution, since the inception of the state, has always granted every person a right to bail and for all offenses with specified exceptions. The Constitution, even as amended, does not prohibit granting bail in *all* cases of treason, murder, and the specified sexual offenses. It does not authorize the denial of bail in *all* cases of treason, murder, and the specified sexual offenses. The Constitution authorizes denial of bail in such cases *only* where the proof is evident or the presumption great. The judge having jurisdiction to grant or deny a request for bail must make that determination and he cannot make such a determination simply because a charge has been filed. Any attempted restriction on such a constitutional right must necessarily be strictly construed. The critical facts were stipulated here.