STATE OF NEBRASKA, APPELLEE, V. DENNIS LEE
SELL, APPELLANT.

277 N. W. 2d 256

Filed April 3, 1979. Nos. 42217, 42218, 42219.

Keith N. Bystrom, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

This appeal presents to the court further questions concerning the provisions of the Nebraska Sexual Sociopath Act, section 29-2901 et seq., R. R. S. 1943. We have previously ruled on various provisions of the Sexual Sociopath Act. See State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595; State v. Wells, 197 Neb. 584, 249 N. W. 2d 904; State v. Little, 199 Neb. 772, 261 N. W. 2d 847; and State v. Shaw, *ante* p. 766, 277 N. W. 2d 106.

The appeal herein involves three separate cases which were consolidated for hearing before this court by agreement of the parties and upon order of this court.

The first case, No. 42217, arises out of defendant's plea of guilty to charges of murder in the second degree, in violation of section 28-402, R. R. S. 1943, and first degree sexual assault, in violation of section 28-408.03, R. R. S. 1943, upon Ruth Eby. It will

hereafter be referred to as the "Eby case."

The second case, No. 42218, arises out of the defendant's plea of guilty to a charge of murder in the second degree of Judith Dangler, in violation of section 28-402, R. R. S. 1943, hereafter referred to as the "Dangler case."

The third case, No. 42219, arises by reason of the defendant's plea of guilty to a charge of burglary with the intent to commit a sexual assault on one Pat Yung, in violation of section 28-532, R. R. S. 1943. It will hereafter be referred to as the "Yung case."

Following Sell's plea of guilty first in the Yung case and later in the Eby case, the trial court, on motion of the State, pursuant to section 29-2902, R. R. S. 1943, suspended further criminal proceedings in both cases. It then ordered proceedings under the provisions of the Nebraska Sexual Sociopath Act.

While these proceedings were pending, Sell was charged with murder in the second degree in the Dangler case. After waiving preliminary hearing, Sell entered a plea of guilty to the information in the Dangler case.

On February 16, 1978, a hearing to determine whether Sell was a sexual sociopath was held, pursuant to section 29-2902(6), R. R. S. 1943, in the Yung and Eby cases. There was no evidence of a sexual assault in the Dangler case, and therefore neither the State nor the court on its own motion included the Dangler case in the proceedings under the Sexual Sociopath Act. Evidence disclosed that Sell murdered Mrs. Dangler some 11 months prior to the time of entering his plea. The condition of the body was such that no determination could be made as to whether there had been a sexual assault upon Mrs. Dangler prior to her being murdered. The record also reveals that Sell denied ever having committed a sexual assault upon Mrs. Dangler.

Sell was examined by two psychiatrists who filed a report with the trial court. From that report the

court found Sell to be a sexual sociopath in the Eby and Yung cases, and ordered him to the Lincoln Regional Center for evaluation as required under the provisions of section 29-2903(1), R. R. S. 1943. At that time the defendant waived trial by jury on the issue of whether or not he was a sexual sociopath. § 29-2903(2), R. R. S. 1943.

On May 26, 1978, after the evaluations conducted at the Lincoln Regional Center were completed, Sell appeared for further hearing as provided by section 29-2903(3), R. R. S. 1943. Our decision in State v. Shaw, *supra*, had not yet been released, and therefore the trial court was unaware of the requirement to impose a sentence in all three cases. The trial court proceeded to impose sentence in the Dangler case, and suspended further proceedings in Yung and Eby.

Before the court pronounced sentence in the Dangler case, Sell filed a motion asking to be declared a sexual sociopath and treated accordingly. In his motion filed in the Dangler case, Sell alleged that his conviction for murder in the second degree met the statutory definition of a sexual offense as prescribed under the provisions of the Nebraska Sexual Sociopath Act, section 29-2901 et seq., R. R. S. 1943. Furthermore, reports from the Lincoln Regional Center filed in the Eby and Yung cases indicated the defendant Sell was a sexual sociopath with regard to all three crimes.

Following conviction of a sexual offense, the Nebraska Sexual Sociopath Act provides for three ways in which proceedings thereunder can be instituted. The court on its own motion may do so, the State on its motion may do so, or the defendant may do so. § 29-2902, R. R. S. 1943.

Before the provisions of section 29-2902, R. R. S. 1943, may be invoked, it is necessary that the defendant first be in fact convicted of a sexual offense as defined by the act. However, if the defend-

ant desires to seek the benefit of the act voluntarily, he may do so even in the absence of a conviction. § 29-2909, R. R. S. 1943. As we pointed out in State v. Wells, *supra*, Nebraska is one of the few states in the Union which provides for a voluntary proceeding. Section 29-2909, R. R. S. 1943, provides as follows: "Any person *whether or not he is guilty of a sexual offense* who believes himself to be a sexual sociopath may initiate proceedings under sections 29-2901 to 29-2910 by filing a petition in the district court of any county alleging that he believes himself to be a sexual sociopath. The judge of such court shall thereupon order such person to be examined by two psychiatrists in the manner provided by section 29-2902 and thereafter proceedings shall be held in the same manner as if such person had committed the sex offense except (a) the petitioner shall be deemed to have waived a jury trial and no jury shall be called to determine whether the petitioner is a sexual sociopath and (b) the proceedings shall be confidential in nature and no publicity shall be permitted concerning the filing of the petition or the proceedings thereunder. The records of such proceeding shall be available to any attorney representing the petitioner but shall not be available to the public." (Emphasis supplied.)

Defendant argues that all three cases should have been considered under the provisions of the Nebraska Sexual Sociopath Act even though murder in the second degree does not specifically require commission of a sexual offense. This court is urged to find. that section 29-2901(1), R. R. S. 1943, does not require sexual motivation to be the primary motivating factor but only to be a substantial motivating factor. There is no question that the definitions contained within section 29-2901(1), R. R. S. 1943, might have been drafted with greater clarity to advise the court of the offenses intended to be within coverage of the act. However, in view of the record in this

case it is not necessary for us to interpret that section, and we shall not do so. American Fed. of S., C. & M. Emp. v. State, 200 Neb. 171, 263 N. W. 2d 643; Jeffries v. Chicago, B. & Q. R. Co., 88 Neb. 268, 129 N. W. 273; Murray v. Omaha Transfer Co., 95 Neb. 175, 145 N. W. 360.

It is clear that in the Yung and Eby cases a sexual offense had been committed, and the provisions of the Nebraska Sexual Sociopath Act were applicable. § 29-2901, R. R. S. 1943. In the Dangler case, the defendant voluntarily submitted himself to the provisions of the Nebraska Sexual Sociopath Act, and therefore the commission of a sexual offense was not required. § 29-2909, R. R. S. 1943. While it is true that section 29-2909, R. R. S. 1943, provides that such request should be made by petition in the District Court, we shall consider the motion filed by defendant to have met that requirement. The trial court should have considered the defendant's motion in Dangler, as well as ordering him examined in Eby and Yung. However, in view of what we have now said in State v. Shaw, *supra*, and in view of the record in this case, the trial court's failure to order a specific sexual sociopath examination in the Dangler case did not result in any prejudicial error. In effect defendant was examined with regard to all three cases. The medical reports included the events in the Dangler case as well as in Yung and Eby. The trial court, in keeping with the rule announced in State v. Shaw, *supra*, was required to impose sentence on Sell in the Dangler case, as it did. It must now impose sentence on Sell in the Yung and Eby cases as well.

The trial court further determined that Sell was an untreatable sexual sociopath in the Yung and Eby cases, and ordered Sell kept and maintained separately at the Nebraska Penal and Correctional Complex for an indefinite time, pursuant to section 29-2903(3), R. R. S. 1943. The trial court of necessity

must likewise find that Sell is an untreatable sexual sociopath in the Dangler case as well.

Defendant assigns as error the trial court's original finding that Sell was untreatable and subsequent order confining him to the Nebraska Penal and Correctional Complex. Rather, defendant contends the trial court should have found Sell treatable and confined him to the Lincoln Regional Center. This claim is based on defendant's belief that before one may be confined to the Nebraska Penal and Correctional Complex under the provisions of the Nebraska Sexual Sociopath Act, it must be found "beyond a reasonable doubt" that treatment will not provide *any* benefit to the defendant. With that interpretation we do not agree.

There are two separate sections in the Nebraska Sexual Sociopath Act which must be examined in connection with this matter. Section 29-2903(3), R. R. S. 1943, provides in part: "If, after such further hearing at least ten of the twelve jurors find that beyond a reasonable doubt the defendant is a sexual sociopath *and* the court finds from the evidence offered at such hearing that the defendant cannot be benefited by treatment, the court shall commit the defendant for an indefinite period in the Nebraska Penal and Correctional Complex * * *." (Emphasis supplied.)

Two separate duties are imposed by this statute. The first duty requires *the jury* to find that defendant is a sexual sociopath. The second duty requires *the court* to find that defendant cannot benefit from treatment. A reading of section 29-2903(3), R. R. S. 1943, makes clear that the requirement to find "beyond a reasonable doubt" that defendant is a sexual sociopath is only imposed upon the jury. Such requirement is not found in the phrase directing the trial court to determine whether defendant can benefit from treatment.

This difference is further established by exam-

ining section 29-2904, R. R. S. 1943, where again the jury's duty is prescribed. It is therein provided that "The burden of proof shall be on the state to establish *such issue* beyond a reasonable doubt." (Emphasis supplied.) A reading of section 29-2904, R. R. S. 1943, leaves no doubt that "such issue," which must be proved beyond a reasonable doubt, is whether defendant is a sexual sociopath and has nothing to do with the matter of treatability. A further reading of section 29-2903(3), R. R. S. 1943, likewise leads to the conclusion that the phrase "benefited by treatment" must mean a program leading to cure and discharge and not simply one which facilitates the defendant's ability to live with his condition.

A trial court has two choices once it is determined a defendant is a sexual sociopath. If the defendant can benefit by treatment, the court is to commit him to a regional center. § 29-2903(3), R. R. S. 1943. On the other hand, if the defendant cannot benefit by treatment, the trial court is to send the defendant to the Nebraska Penal and Correctional Complex. § 29-2903(3), R. R. S. 1943. If we hold that "benefit by treatment" means permitting the defendant to adjust to his condition so as to live with less pain but not to be cured, then the provisions of section 29-2903 (3), R. R. S. 1943, with regard to whether commitment should be in a regional center or the Nebraska Penal and Correctional Complex, would be meaningless. It seems clear and beyond question that all persons can, to some extent no matter how minor, benefit from treatment. Even persons afflicted with a terminal illness can be made more comfortable by treatment. Were we to hold that evidence of any benefit from treatment would require the placing of an individual in a regional center, there would never be an instance where anyone would be committed to the Nebraska Penal and Correctional Complex. We cannot believe that was the intention of the Legisla-

ture in enacting the Sexual Sociopath Act. We therefore hold in the absence of evidence that defendant can benefit by treatment to the extent of being cured, it must be found that defendant is untreatable and must be committed for an indefinite period in the Nebraska Penal and Correctional Complex. The finding as to whether one can benefit from treatment is a question of fact to be determined by the trial court. We do not disturb such finding on appeal unless it can be said that there was no evidence upon which such conclusion could be based and such declaration was an abuse of discretion. See, Courtnay v. Price, 12 Neb. 188, 10 N. W. 698; Glass v. Harper, 195 Neb. 724, 240 N. W. 2d 48.

We have examined the record in this case and must conclude a finding that defendant cannot benefit from treatment is fully supported by the evidence and was not error. Dr. William Robert Stone, Jr., a clinical psychologist testifying on behalf of the State, indicated he was not aware of any treatment alternatives that would benefit defendant. The most he could say was that defendant could benefit in terms of personal adjustment to the correctional setting by involvement in long-term physiotherapy, having as its objective the development of insight and anxiety reduction. Dr. Leonard Woytassek, a psychiatrist employed by the Lincoln Regional Center, testified in his opinion defendant could not benefit from treatment at the Lincoln Regional Center because there was no way that success of the treatment could be tested. Defendant's own expert, Dr. Ronald Franks, a psychiatrist, testified his proposed program of treatment would not necessarily require defendant's release. His opinion was that defendant could benefit from treatment even though he would not necessarily be cured. In view of what we have said as to the meaning of "cannot be benefited by treatment," the evidence clearly established that defendant could not benefit by treatment. We find the trial

court correct in directing defendant to be confined to the Nebraska Penal and Correctional Complex for an indefinite period.

Defendant finally argues he has a right to treatment for his infirmity which would preclude any incarceration in the Nebraska Penal and Correctional Complex since no treatment is provided there. The record, however, fails to support that contention. We have no evidence before us that defendant will not receive such care and treatment as may be appropriate to him under the circumstances. Quite to the contrary, in State v. Little, 199 Neb. 772, 261 N. W. 2d 847, we emphasized that even individuals confined to the Nebraska Penal and Correctional Complex were entitled to care, saying "The 'care' of such an individual must include, at the very least, some effort to make the possibility of treatment open to him." Moreover, the laws of the State of Nebraska, under which an individual is confined to the Nebraska Penal and Correctional Complex, specifically impose upon the chief executive officer of such facility the duty to provide each inmate appropriate medical care. Such official must further evaluate each person so committed with regard to appropriate treatment for his rehabilitation, including medical and psychological treatment and educational and vocational training. §§ 83-179, 83-178, and 83-181, R. R. S. 1943. In the absence of evidence in the record indicating that the defendant Sell is, in this regard, being abused or is not receiving such treatment as is necessary for his proper care and rehabilitation while confined in the Nebraska Penal and Correctional Complex, we are unable to pass upon that question. For that reason, such error is without merit.

We therefore find that defendant should be returned to the District Court in which he was convicted and that the trial court should sentence Sell in the Eby and Yung cases; after which he shall be re-

turned to the Nebraska Penal and Correctional Complex for an indefinite period, pursuant to the Nebraska Sexual Sociopath Act. In all other respects, we affirm the decisions of the trial court.

AFFIRMED AS MODIFIED.